ORIGINAL 30

P FILED

1    **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2    Name  MCHENZIE    ISRAEL    N.    JAN 2 5 2008
          (Last)        (First)      (Initial)

3    Prisoner Number  T-58501    RICHARD W. WIEKING
                                  CLERK, U.S. DISTRICT COURT
4    Institutional Address C.S.P. CORCORAN, P.O. Box 8800, CORCORAN, CA. 93212
                                  NORTHERN DISTRICT OF CALIFORNIA
5

6    ===================================================================
                        **UNITED STATES DISTRICT COURT**    CV 08 0551
7                       **NORTHERN DISTRICT OF CALIFORNIA**

8    ISRAEL NOEL MCHENZIE                     )                                    PJH
     (Enter the full name of plaintiff in this action.)  )
9                                              )
                          vs.                  )        Case No. _____
10                                             )        (To be provided by the clerk of court)
     DERRAL G. ADAMS                          )
11   _____                  )        **PETITION FOR A WRIT**
                                               )        **OF HABEAS CORPUS**
12   _____                  )
                                               )
13   _____                  )
                                               )
14   (Enter the full name of respondent(s) or jailor in this action)  )
                                               )
15

16   ===================================================================
                        Read Comments Carefully Before Filling In

17   When and Where to File

18       You should file in the Northern District if you were convicted and sentenced in one of these

19   counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20   San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21   this district if you are challenging the manner in which your sentence is being executed, such as loss of

22   good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23       If you are challenging your conviction or sentence and you were not convicted and sentenced in

24   one of the above-named fifteen counties, your petition will likely be transferred to the United States

25   District Court for the district in which the state court that convicted and sentenced you is located. If

26   you are challenging the execution of your sentence and you are not in prison in one of these counties,

27   your petition will likely be transferred to the district court for the district that includes the institution

28   where you are confined. Habeas L.R. 2254-3(b).



<u>Who to Name as Respondent</u>

You must name the person in whose actual custody you are. This usually means the Warden or jailor. Do not name the State of California, a city, a county or the superior court of the county in which you are imprisoned or by whom you were convicted and sentenced. These are not proper respondents.

If you are not presently in custody pursuant to the state judgment against which you seek relief but may be subject to such custody in the future (e.g., detainers), you must name the person in whose custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack was entered.

A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE

1. What sentence are you challenging in this petition?

(a)    Name and location of court that imposed sentence (for example; Alameda County Superior Court, Oakland):

<u>SANTA CLARA Co. SUPERIOR COURT</u>    <u>12425 MONTEREY RD. SAN MARTIN CA. 95046 (SOUTH CO. FACILITY)</u>

Court                                    Location

(b)    Case number, if known <u>CC448878</u>

(c)    Date and terms of sentence <u>3 STRIKES 30 To LIFE ( 4-01-05)</u>

(d)    Are you now in custody serving this term? (Custody means being in jail, on parole or probation, etc.)        Yes __✓__    No _____

Where?

Name of Institution: <u>C. S. P. CORCORAN</u>

Address: <u>P. O. BOX 8800, CORCORAN, CA. 93212</u>

2. For what crime were you given this sentence? (If your petition challenges a sentence for more than one crime, list each crime separately using Penal Code numbers if known. If you are challenging more than one sentence, you should file a different petition for each sentence.)

<u>P.C §459/460, Subd(a) and P.C §496 Subd.(a)</u>

PET. FOR WRIT OF HAB. CORPUS        - 2 -

3. Did you have any of the following?

Arraignment:                    Yes ✓      No _____

Preliminary Hearing:            Yes ✓      No _____

Motion to Suppress:             Yes ✓      No _____

4. How did you plead?

Guilty _____    Not Guilty ✓    Nolo Contendere _____

Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

Jury ✓      Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?              Yes _____    No ✓

7. Did you have an attorney at the following proceedings:

(a)    Arraignment                    Yes ✓      No _____

(b)    Preliminary hearing            Yes ✓      No _____

(c)    Time of plea                   Yes ✓      No _____

(d)    Trial                          Yes ✓      No _____

(e)    Sentencing                     Yes ✓      No _____

(f)    Appeal                         Yes ✓      No _____

(g)    Other post-conviction proceeding    Yes _____    No ✓

8. Did you appeal your conviction?              Yes ✓      No _____

(a)    If you did, to what court(s) did you appeal?

Court of Appeal                Yes ✓      No _____

Year: 2006    Result: _____DENIED_____

Supreme Court of California    Yes ✓      No _____

Year: 2006    Result: _____DENIED_____

Any other court                Yes _____    No ✓

Year: _____    Result: _____

(b)    If you appealed, were the grounds the same as those that you are raising in this

1         petition?          Yes ✓      No____

2     (c)   Was there an opinion?       Yes ✓      No____

3     (d)   Did you seek permission to file a late appeal under Rule 31(a)?

4                                                        Yes ____     No ✓

5         If you did, give the name of the court and the result:

6         ____ N/A _____

7         _____

8 9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

9 this conviction in any court, state or federal?         Yes ✓     No_

10     [Note: If you previously filed a petition for a writ of habeas corpus in federal court that

11 challenged the same conviction you are challenging now and if that petition was denied or dismissed

12 with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

13 for an order authorizing the district court to consider this petition. You may not file a second or

14 subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

15 U.S.C. §§ 2244(b).]

16    (a)   If you sought relief in any proceeding other than an appeal, answer the following

17         questions for each proceeding. Attach extra paper if you need more space.

18         I.    Name of Court: **SUPERIOR COURT OF CALIFORNIA**

19            Type of Proceeding: **HABEAS - CORPUS**

20            Grounds raised (Be brief but specific):

21            a. **SEE PAGES 4·A — 4·C**

22            b._____

23            c._____

24            d._____

25            Result: **DENIED** _____ Date of Result: **3-20-07**

26         II.   Name of Court: **STATE OF CALIFORNIA SIXTH APPELLATE DISTRICT**

27            Type of Proceeding: _____ **HABEAS - CORPUS**

28            Grounds raised (Be brief but specific):

a. __SEE PAGES 4-A — 4-C__

b. __SAME AS A1 (supra)__

c. _____

d. _____

Result: __DENIED__ Date of Result: __7-09-07__

III.   Name of Court: __SUPREME COURT OF CALIFORNIA__

Type of Proceeding: __HABEAS - CORPUS__

Grounds raised (Be brief but specific):

a. __SEE PAGES 4-A — 4-C__

b. __SAME AS A1 (supra)__

c. _____

d. _____

Result: __DENIED__ Date of Result: __1-03-08__

IV.   Name of Court: _____

Type of Proceeding: _____

Grounds raised (Be brief but specific):

a. _____

b. _____

c. _____

d. _____

Result: _____ Date of Result: _____

(b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

Yes _____    No _✓_

Name and location of court: _____

B. GROUNDS FOR RELIEF

State briefly every reason that you believe you are being confined unlawfully.  Give facts to

support each claim.  For example, what legal right or privilege were you denied?  What happened?

Who made the error?  Avoid legal arguments with numerous case citations.  Attach extra paper if you

1   need more space. Answer the same questions for each claim.

2       [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3   petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4   499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5   Claim One: **SEE CLAIM 1 AS PAGE 6A - 6B**

6

7   Supporting Facts:

8

9

10

11  Claim Two: **SEE CLAIM 2 AS PAGE 6-C - 6-H**

12

13  Supporting Facts:

14

15

16

17  Claim Three: **SEE CLAIM 3 AS PAGE 6I - 6J**

18

19  Supporting Facts:

20

21  **SEE CLAIMS 4 - 10 STARTING ON PAGE 6-K -**

22

23      If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25  **N/A**

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1        List, by name and citation only, any cases that you think are close factually to yours so that they

2    are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3    of these cases:

4    <u>SEE ALL THE CASES AT THE END OF EACH CLAIM.</u>

5    _____

6    _____

7    Do you have an attorney for this petition?       Yes____    No ✓

8    If you do, give the name and address of your attorney:

9    _____

10        WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11    this proceeding. I verify under penalty of perjury that the foregoing is true and correct.

12

13    Executed on _____       *Israel N M°kenzi*

14            Date               Signature of Petitioner

15

16

17

18

19

20    (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS    - 7 -

# TABLE OF GROUNDS

Page

Ground

1. Direct Appeal Counsel provided ineffective assistance of counsel in failing to raise meritorious issues in violation of due process; effective assistance of appellate counsel and equal protection under the 5TH, 6TH and 14TH Amendments of the U.S. Constitution thereto.  **6-A**

2. Petitioners conviction was obtained as the result of ineffective assistance of counsel at trial by failure to investigate petitioners sole viable defense. This violated petitioners right to effective assistance of counsel, as guaranteed by the U.S. Constitution and the 5th, 6th and 14th Amendments thereto.  **6-C**

   A. Failure to investigate.  **6-C**
   B. Preventing from testifying.  **6-C**
   C. Failure to challenge insufficent evidence of burglary under California Penal Code §§ 995, 1118, and 1181 which denied a full and fair hearing state court.  **6-C**

   D. Failure to put the prosecution to an adversarial burden by a viable defense that was available.  **6-AD**

   E. Failure to object to Petitioners alleged six priors being only one.  **6-E**

   F. Failure to object to Prosecutorial misconduct during closing and rebuttal argument that allowed argument not in evidence and mistatement of burglary element to lower evidence to slight.  **6-E**

   G. Trial Counsel unjustly conceeded count 2 (receiving stolen property) knowing full well that she put no defense on towards count 1 (residental burglary) that was available.  **6-G**

   H. Trial Counsel failed to examine government witness(s) on inconsistent testimony.  **6-G**

   I. Trial Counsel erronously conceeded that Petitioner stole purse, when in fact, petitioner never told counsel that.  **6-H**

2-A of 6   4-A OF 7

TABLE OF GROUNDS — Continued

Ground                                                              Page

3. Prosecutor misconduct in arguing in closing
and rebuttal the incorrect burglary theroy that
lowered their burden to be slight in violation
of due process and fair trial under the 5TH, 6TH,
and 14TH amendments of the U.S. Constitution.        6-I

4. Petitioner understood his prior burglary's were one
prior per his plea agreement and the use of his May
20, 2002 conviction as six seperate "strikes" breached
the plea agreement in violation of clearly established
United States Supreme Court law.                     6-K

5. The trial court abused it's discretion by refusing
to strike petitioners prior strike conviction.        6-L
   A. Prelimdnary Information.                         6-L
   B. The majority of the Court of Appeal was
      troubled by petitioners sentence.               6-P

6. The state and federal constitution prohibits
against Double Jeopardy prevents imposititition of
potential life sentonces for residential burglary
and recieving stolen property.                        6-S

7. The next 3 issues arc being raised in addition
to habeas as Application to Recall the Remittur and
due to change in facts and to put state on notice
of federal authority.                                 6-Ø
   A. There is Constitutionally insufficient
      evidence to sustain Petitioners burglary
      conviction under both state and federal
      constitutions petitioner has a right to be
      convicted on the basis of sufficient evidence   6-X

~~Z Beefate~~

4B OF 7

TABLE OF GROUNDS - Continued

Page

Ground

7. B. The instruction under CALJIC 2.15 on the inference of guilt of burglary or recieving stolen property from possession of recently stolen property was prejudical error based on the evidence in this case under due process of law as guaranteed by the fourteenth amendment to the U.S. Constitution    6-CC

C. Petitioner's sentence is in violation of cruel and unusual under both California and Federal law because the majority of the Court of Appeal was "troubled" by the sentence.    6-GG

1. The majority of the Court of Appeal was troubled by Petitioner's sentence.    4-DD

2. The penalty is disproportionate as applied to this offense and this offender. The penalty is excessive in light of Petitioner's conduct.    6-II

3. The penalty is disproportionate when compared to punishment prescribed in California for other, more serious offenses.    6-MM

4. The penalty is disproportionate when compared to recidivist punishments in other jurisdictions.    6-OO

~~2 of 8~~    4-C of 7

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

DIRECT APPEAL COUNSEL PROVIDED INEFFECTIVE ASSISTANCE OF COUNSEL IN
FAILING TO RAISE MERITORIOUS ISSUES IN VIOLATION OF DUE PROCESS;
EFFECTIVE ASSISTANCE OF APPEALLATE COUNSEL, AND EQUAL PROTECTION UNDER
5TH 6TH AND 14TH AMMENDMENT OF THE U.S CONST, AMMENDMENTS THERETO

a. Supporting facts:
Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who* did exactly *what* to violate your rights at what time *(when)* or place *(where).* *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

PETITIONER TOLD H. HIGASHI ABOUT A TELLING THE POLICE HE FOUND THE PURSE; THAT
THERE WERE GARDENERS AND OTHERS IN THE NEIGHBORHOOD THE DAY OF THE BURGLARY;
PETITIONER DID NOT BREAK INTO VICTIMS HOME; THAT THE PRIOR 2002 CONVICTION
WAS SUPPOSED TO BE ONLY ONE BURGLARY PRIOR; THAT TRIAL COUNSEL WOULD NOT ALLOW
PETITIONER TO TESTIFY TO THE TRUTH; SHE WOULD NOT ALLOW PETITIONER TO TESTIFY, SHE
FAILED TO OBJECT TO PROSECUTOR MISCONDUCT IN ARGUING INCORRECT THEORY OF
RESIDENTIAL BURGLARY TO LOWER STANDARD TO SLIGHT; FAILED TO CHALLENGE COUNT
ONE FOR INSUFFICIENT EVIDENCE; FAILING TO PUT PROSECUTOR TO ADVERSARIAL
TESTING OF COUNT ONE; UNJUSTLY CONCEEDING COUNT TWO WHEN NOT PUTTING ANY DEFENSE
INTO COUNT ONE; AND UNJUSTLY MOTION PURSUANT TO 402 TO EXCLUDE PETITIONERS
STATEMENTS, IN WHICH APPEALLATE COUNSEL HAD TO OBTAIN TWO EXTENTIONS OF TIME
TO FILE PETITIONERS OPENING BRIEFS FOR A TOTAL OF SIXTY DAYS. THE REASONS
FOR EXTENTION OF TIME WAS DUE TO APPEALLATE COUNSELS HAVING TO FILE

b. Supporting cases, rules, or other authority (optional):          (CONTINUED ON FOLLOWING PAGE)
*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

PEOPLE V. LUCAS (95) 12 Cal. 4TH 415, 436-437; In re Gay (1998) 19 Cal. 4th 771;
SMITH V. ROBBINS 528 US. 259 (00); ROMERO V. TANSY 46 F3 1024 (10TH 95);
JOHNSON V. DUGGER 911 F2d 440 (11TH 90); In re Harris (1993) 5 Cal. 4th 813;
EVITTS V. LUCEY 469 U.S. 387 (1985); In re Maszack (1975) 5 x C.A.500; 503

6-A OF 7

a. SUPPORTING FACTS: CONTINUED

TWELVE SEPERATE BRIEFS: MOST
OF PETITIONER'S CLAIMS NOT RAISED ON DIRECT
APPEAL REQUIRED INVESTIGATION TO FILE A
COMPANION HABEAS-CORPUS, AND APPEALLATE
COUNSEL DID NOT HAVE THE TIME (SEE EXIBITE.)
TRIAL COUNSEL SAID SHE WOULD LOOK INTO
EVERYTHING, AND NEVER DID. THAT THE COURT
OF APPEAL FOUND SPECULATIVE IN MS. JOHNSTON'S
PURSE NOT BEING SURE WHERE IT WAS, AND MAY
NOT HAVE BEEN TAKEN FROM THE HOUSE. (SEE OPINION
AT p. 4 lines 9-17)
PETITIONER ALSO INCORPORATES GROUND
2 AS IF SET FORTH HEREIN.

6-B OF 7

Page 3 A of 6

7. Ground 2 or Ground _____ (if applicable):

PETITIONER'S CONVICTION WAS OBTAINED AS THE RESULT OF INEFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL BY FAILURE TO INVESTIGATE PETITIONER'S SOLE VIABLE DEFENSE. THIS VIOLATED PETITIONER'S RIGHT EFFECTIVE ASSISTANCE OF COUNSEL, AS GUARANTEED BY THE U.S. CONST. AND THE 5TH 6TH AND 14TH AMMENDMENTS THERETO.

a. Supporting facts:

A. FAILURE TO INVESTIGATE: 1. (GARDNER AND HELPER NEVER QUESTIONED (SEE EXIBITS A & D)

2. INNOCENT INTENT TO RETURN PROPERTY IS DEFENSE TO STOLEN PROPERTY (SEE EXIBIT A)
HIROMI HIGASHI
3. COUNSEL NEVER QUESTIONED RE PETITIONER FINDING PURSE. (SEE EXIBITS A & B)

4. ERRONEOUSLY EXCLUDED PETITIONER'S STATEMENT OF HE FOUND PURSE.(SEE EXIBITS A & C)

5. WHETHER FOOTPRINTS WERE LIFTED OR FOUND (SEE EXIBIT D)

6. TO WHETHER OR NOT PETITIONER WAS FOUND WITH ANY STOLEN PROPERTY (SEE EXIBIT D)

7. THAT THE PURSE WAS NOT TAKEN FROM THE HOUSE. (OS THE COURT OF APPEAL OPINION FOUND AT pg. 4, lines 9-17 ERRONEOUSLY CALLING IT SPECULATIVE (SEE EXIBIT K)

8. PETITIONER BEING UNDER THE INFLUENCE OF ALCOHOL AND NARCOTICS WHEN TRYING TO CASH CHECK, WHEN FULLY AWARE. (SEE EXIBITS A & J) PETITIONER INCORPORATES ALL GROUNDS AND FACTS PRESENTED HEREIN AS IF SET FORTH HERE.

B. PREVENTING FROM TESTIFYING: PETITIONER BEGGED TRIAL COUNSEL TO TESTIFY AFTER REALIZING SHE WAS NOT PUTTING ANY DEFENSE ON REGUARDING THE RESIDENTIAL BURGLARY, NOR RECIEVING STOLEN PROPERTY. (SEE EXIBIT A)

C. FAILURE TO CHALLENGE INSUFFICIENT EVIDENCE OF BURGLARY UNDER CALIFORNIA
1118  1181
PENAL CODE §§ 995, 1181 AND 1181 WHICH DENIED A FULL AND FAIR HEARING IN STATE COURT. COUNSEL FAILED TO CHALLENGE INSUFFICIENT EVIDENCE OF RESIDENTIAL
§§
BURGLARY BY PENAL CODE 995, 1118, 1181 THUS WITH DRAWING A FULL AND FAIR

b. Supporting cases, rules, or other authority:

ROCK V ARKANSAS (1987) 483 STRICKLAND V WASHINGTON 466 U.S 668 (1984)
- BUT FOR COUNSEL'S ERRORS, THE RESULT OF THE PROCEEDINGS WOULD HAVE BEEN DIFFERENT. PEOPLE V. BENOVIDES (05) 35 (4TH 69, 92-93) PEOPLE V. OSBORNE 77 C.A. 3rd 472, 476
PEOPLE V. POPE (1979) 23 Cal. 3d 412, 125

6 - C OF 7

a. SUPPORTING FACTS: CONTINUED:

HEARING IN STATE COURT THROUGH DIRECT APPEAL.(SEE EXIBIT A.) PETITIONER INCORPOR-ATES THE INSUFFICIENT ARGUMENT IN DIRECT APPEAL.

D. FAILURE TO PUT THE PROSECUTION TO AN ADVERSARIAL BURDEN BY A VIABLE DEFENSE. THAT WAS AVAILABLE

1.) ERRONEOUSLY EXCLUDING PETITIONER'S STATE-MENT, DEFENSE FEEDING INTO THE PROSECUTORS GAME PLAN.(SEE EXIBITS A $C)

2.) PRESENTING NO OPENING ARGUMENT NOR EVIDENCE THAT WAS AVAILABLE TO A CONSCIEN-TIOUS ADVOCATE.(SEE EXIBIT F.)

3.) BY NOT INVESTIGATING THE GARDNER AND HIS ASSISTANT AND OTHERS IN THE CLOSE-KNIT COMMUNITY.(SEE EXIBIT A)

4.) BY NOT GETTING EXPERTS TO COUNTER THE PROSECUTION'S WITNESS FOR FINGERPRINT EXPERT AND FOOTPRINT EXPERT.(SEE EXIBIT A.)

5.) BY FAILING TO PRESENT AN AFFIRMATIVE DEFENSE AT THE PRELIMINARY HEARING.

6.) FAILING TO EXAMINE GOVERNMENT WITNESSE(S) AT TRIAL REGUARDING MATERIAL AND RELATIVE INCONSISTANT TESTIMONY.(SEE EXIBIT H)

7.) FAILING TO ARGUE THAT THERE WAS IN-SUFFICIENT EVIDENCE TO ESTABLISH THAT

PAGE 14-A-OF 108

a. SUPPORTING FACTS: CONTINUED.

THE PURSE WAS STOLEN FROM HOUSE (SEE EX. A3H)

PETITIONER INCORPORATES ALL THE MATTERS
IN SUBSECTIONS A,B,C,F,G,H,& I HEREIN
ARGUMENT II AS IF SET FORTH HERE.

E. FAILURE TO OBJECT TO PETITIONER'S ALLEGED
SIX PRIORS BEING ONLY ONE.

PETITIONER ADVISED TRIAL COUNSEL THAT WHEN
HE PLEAD GUILTY IN 2002 THAT HE UNDERSTOOD
THAT HE WOULD ONLY BE SUBJECT TO ONE ENHANCE-
MENT AS A PRIOR, IF HE WAS TO RE-OFFEND IN
THE FUTURE. PETITIONER INCORPORATES GROUND 4 AS IF
PRESENTED HERE (SEE EXA)

F. FAILURE TO OBJECT TO PROSECUTORIAL MIS-
CONDUCT DURING CLOSING AND REBUTTAL
ARGUMENT THAT ALLOWED ARGUMENT NOT IN
EVIDENCE AND MISSTATEMENT OF BURGLARY
ELEMENT TO LOWER EVIDENCE TO SLIGHT.

1.) TRIAL COUNSEL FAILED TO MAKE ANY
OBJECTIONS DURING THE PROSECUTORIAL CLOSING
AND REBUTTAL ARGUMENT TO MATTERS NOT IN
EVIDENCE AND INCORRECT LEGAL THEORY(S)
AS FOLLOWS:

2.) IT IS NOT NECESSARY THAT FACTS BE PROVED BY
DIRECT EVIDENCE. RT 271:9-10

3.) NEITHER DIRECT OR CIRCUMSTANCIAL EVIDENCE
IS ENTITLED TO ANY GREATER WEIGHT THAN
THE OTHER. THEY ARE BOTH GOOD AND ACCEPT-
ABLE AS A MEANS OF PROOF. RT 271:12-15

4.) HOWEVER, THE CORROBORATING EVIDENCE

Page 14 B of 6

a. SUPPORTING FACTS: CONTINUED.

NEED ONLY BE SLIGHT, AND NEED NOT—"— EXCUSE ME, AND NEED NOT BY ITS SELF BE SUFFICIENT TO WARRANT AN INFERENCE OF GUILT. AT 276: 17-19

5.) AND CORROBORATION MEANS THE POSSESSION OF THE STOLEN PROPERTY AS IT RELATES TO THE BURGLARY. AT 276: 21-22

6.) THE FACT OF THAT POSSESSION (STOLEN CHECKS) IS NOT BY ITSELF SUFFICIENT TO PERMIT AN INFERENCE THAT DEFENDANT IS GUILTY OF RESIDENTIAL BURGLARY. AT 276: 11-14

(THIS IS CORRECT, AND THE PROSECUTOR STATES;)

7) POSSESSION OF CHECKS IS SUFFICIENT EVIDENCE OF RESIDENTIAL BURGLARY. AT 303: 11-15 TRIAL COUNSEL FAILED TO INVESTIGATE THE CASE WITH AVAILABLE EVIDENCE/LEADS, CON-CEEDED RECIEVING STOLEN PROPERTY (SEE ARGUMENT II, (I) AND PUT NO DEFENSE TO THE MORE SERIOUS CHARGE OF RESIDENTIAL BURGLARY, AND COUPLED IT BY ALLOWING PROSECUTOR TO WALK AND LIE TO THE JURY. MIND YOU, PETITIONER ADMITTED TO POLICE HE FOUND PURSE, ie CHECKS, BUT DID NOT COMMIT RESIDENTIAL BURGLARY. "BUT SHE DIDNT MAKE A MISTAKE, SHE LEFT THE PURSE ON THE DINNING ROOM TABLE." AT's 280: 22-23, 281: 18, 283: 14, 285: 26, $ 302: 27.

8.) LASTLY, TRIAL COUNSEL DID NO OBJECTION TO PROSECUTOR'S CLOSING AND REBUTTAL, EVEN WHEN

a. SUPPORTING FACTS: CONTINUED

PROSECUTOR DEMONSTRATED HOW.

SEE RT's 295:-296, AND 296:16-18.

G. TRIAL COUNSEL UNJUSTLY CONCEEDED COUNT 2 (RECIEVING STOLEN PROPERTY) KNOWING FULL WELL THAT SHE PUT NO DEFENSE ON TOWARDS COUNT(1) (RESIDENTIAL BURGLARY) THAT WAS AVAILABLE.

TRIAL COUNSEL CONCEEDED GUILT OF RECIEVING STOLEN PROPERTY AFTER DOING NO INVESTIGATION THAT WAS AVAILABLE (HIROMI HIGASHI, GARDNER AND ASSISTANT, NO CANVOUSING THE NEIGHBORHOOD, PETITIONER ADMITTING HE FOUND PURSE ect.) AND ALLOWING PROSECUTOR TO ARGUE INCORRECT THEORY (SEE SECTION II H.), AND PREVENTING PETITIONER FROM TESTIFYING AS FOLLOWS; RT's 291:12-15, 292:2-4, 292:12-16, 292:17-23, 293:5-6 AND 297:1-3. (ALSO SEE EXIBIT A.)

H. TRIAL COUNSEL FAILED TO EXAMINE GOVERNMENT WITNESSE(S) ON INCONSISTENT TESTIMONY.

PETITIONER ADVISED TRIAL COUNSEL THAT THE VICTIM TESTIFIED AT THE PRELIMINARY HEARING THAT HER APPOINTMENT WAS AT 2:30 P.M. AND AT TRIAL SAID 3:00 P.M. AND COUNSEL STATED NO INCONSISTENT EVIDENCE. (SEE EXIBIT H.)

a. SUPPORTING FACTS: CONTINUED

I. TRIAL COUNSEL ERRONOUSLY CONCEEDED
THE PETITIONER STOLE THE PURSE, WHEN IN
FACT, PETITIONER NEVER TOLD COUNSEL THAT.
IN FACT PETITIONER TOLD TRIAL COUNSEL HE
FOUND THE PURSE, WHICH WAS CONSISTENT
WITH WHAT HE TOLD POLICE. (SEE EXIBITS A & I)

PETITIONER ALSO INCORPORATES ALL THE
MATTERS IN SUB-SECTIONS A, B, C, D, E, F,
G, H, AND I HEREIN ARGUMENT II AS SET FORTH
HERE.

7. Ground 3

PROSECUTORIAL MISCONDUCT IN ARGUING IN CLOSING AND
REBUTTAL THE INCORRECT BURGLARY THEORY THAT LOWERED THEIR BURDEN
TO BE SLIGHT IN VIOLATION OF DUE PROCESS AND FAIR TRIAL UNDER
THE 5TH 6TH, AND 14TH AMENDMENT OF THE U.S. CONSTITUTION

a. Supporting facts:

PETITIONER INCORPORATES GROUND II AS SET FORTH HEREIN,
BUT FOR INEFFECTIVE ASSISTANCE OF COUNSEL THEIR WOULD BE A REASONABLE
PROBABILITY THE VERDICT WOULD BE DIFFERENT. PETITIONER INCORPORATES
ALSO, ARGUMENTS ONE AND TWO RAISED IN THE DIRECT APPEAL REGUARDING DUE
"WHETHER THEIR IS CONSTITUTIONALLY SUFFICINT EVIDENCE TO SUSTAIN
PETITIONER'S BURGLARY CONVICTION" AND TWO "WHETHER THE INSTRUCTION
UNDER CALJIC 2.15 ON THE INFERENCE OF GUILT OF BURGLARY OR RECIEVING
STOLEN PROPERTY FROM POSSESSION OF RECENTLY STOLEN PROPERTY, WAS PREJ-
UDICIAL ERROR BASED ON THE EVIDENCE IN THIS CASE." TRIAL COUNSEL FAILED
TO MAKE ANY OBJECTION DURING THE PROSECUTORIAL CLOSING AND REBUTTAL ARGUMENT
TO MATTERS NOT IN EVIDENCE AND INCORRECT LEGAL THEORY(S) AS FOLLOWS: 1.) IT IS
NOT NECASSARY THAT FACTS BE PROVED BY DIRECT EVIDENCE RT 271:9-10 2.) NEITHER
DIRECT OR CIRCUMSTANCIAL EVIDENCE IS ENTITLED TO ANY GREATER WEIGHT THAN
THE OTHER. THEY ARE BOTH GOOD AND ACCEPTABLE AS A MEANS OF PROOF. RT 271:12-15
3.) IT DOES NOT MATTER WHETHER THE INTENT (SPEAKING OF BURGLARY ELEMENT) WITH
THE ENTRY WAS MADE WAS THEREFORE CARRIED OUT. RT 274:14-15. 4.) HOWEVER, THE
COROBORATING EVIDENCE NEED ONLY BE SLIGHT, AND NEED NOT—"— EXCUSE ME, AND NEED
NOT BY ITSELF BE SUFFICIENT TO ~~PERMIT AN INFERENCE THAT THE DEFENDANT IS GUILTY
OF RESIDENTIAL BURGLARY~~ WARRANT AN INFERENCE OF GUILT. RT 276:17-19 6.) AND
COROBORATION MEANS THE POSSESSION OF THE STOLEN PROPERTY AS IT RELATES TO THE BURGLARY.
RT 276:21-22. THE FACT OF THAT POSSESSION (STOLEN CHECKS) IS NOT BY ITSELF
SUFFICIENT TO PERMIT AN INFERENCE THAT THE DEFENDANT IS GUILTY OF RESIDEN-
TIAL BURGLARY. RT 276:11-14 (THIS IS CORRECT. AND THE PROSECUTOR STATES)
"POSSESSION OF CHECKS IS SUFFICIENT EVIDENCE OF RESIDENTIAL BURGLARY." RT 303:11-15
"BUT SHE DIDN'T MAKE A MISTAKE, SHE LEFT HER PURSE ON THE DINNING ROOM TABLE."
RT'S 280:22-23, 281:18, 283:14, 285:16, AND 302:27 LASTLY, TRIAL COUNSEL DID NO

b. Supporting cases, rules, or other authority:

PEOPLE V. ANZALONE 141 C A 4TH 393
BERGER V. U.S. 295 U.S. 78 (1935)
V. WAINWRIGHT 477 U.S. 168 (86)



a. SUPPORTING FACTS; CONTINUED

OBJECTION TO PROSECUTORS CLOSING
AND REBUTTAL EVEN WHEN PROSECUTOR DEMONSTRATED
HOW. SEE RT 295:-296, 28-1 AND 296:16-18.

7. Ground 4

PETITIONER UNDERSTOOD HIS PRIOR BURGLARYS WERE ONE PRIOR PER HIS PLEA AGREEMENT AND THE USE OF HIS MAY 20, 2002 CONVICTION AS SIX SEPERATE "STRIKES" BREACHED THE PLEA AGREEMENT IN VIOLATION OF CLEARLY ESTABLISHED UNITED STATES SUPREME COURT LAW.

a. Supporting facts:

PETITIONER WAS PROMISED BY HIS ATTORNEY AND THE PROSECUTOR AT HIS [ SUPERIOR COURT OF SANTA CLARA 6-20-02 CASE No. EE22092 ] PLEA AND SENTENCING THAT HIS (6) SIX BURGLARY CONVICTIONS WOULD COUNT AS ONE IN THE FUTURE AND HE WOULD BE SUBJECT TO A FIVE (5) YEAR ENHANCEMENT BECAUSE OF HIS 2002 CASE ( SEE EXHIBIT A )-ATTACHED HERETO THE ONLY THING PETITIONER COULD FIND IN SUPPORT OF THIS ARGUMENT BESIDES HIS DECLARATION AS EXHIBIT A IS CT 160. ( SEE EXHIBIT L HERETO ) NOTE THAT IT IS ONE PRIOR CONVICTION LISTED ON THE F.B.I. SHEET

b. Supporting cases, rules, or other authority:

PEOPLE V. TOSCANO 20 C.R. 3d 923, 926, ( 2nd DIST. Ct. App. 2004 ) Cal Civ. Code § 1636. BUCKLEY V TERHUNE 441 F 3d 688, 694-95 ( 9TH CIR. 2006 ) INS V ST. CYR, 533 U.S. 289, 322-23 ( 01 ) BROWN V POOLE 337 F. 3d 1155, 1159-60 ( 9TH CIR. 2003 ) IN RE HARRIS 775 P 2d 1057, 1060 ( CAL 1989 ) MABRY V. JOHNSON 467 U.S. 504, 509-10 ( 84 ) SANTOBELLO V. NEW YORK, 404 U.S. 257 ( 71 ) DAVIS V. WOODFORD, DIRECTOR, CDC 9TH CIR # 05-55164

6-K OF 7



7. Ground 5.

THE TRIAL COURT ABUSED IT'S DISCRETION BY REFUSING
TO STRIKE PETITIONER'S PRIOR STRIKE CONVICTION

a. Supporting facts:

A. PRELIMINARY INFORMATION: PETITIONER HAS CONTENDED
HIS 2002 BURGLARY CONVICTION IS ONE STRIKE PER THE PLEA BARGIN
AT THAT TIME. PETITIONER WILL REFER TO HIS 2002 STRIKE IN
THE SINGULAR. AT THE SENTENCING HEARING ON APRIL 1, 2005,
PETITIONER REQUESTED THAT PURSUANT TO ROMERO, THE TRIAL
COURT EXERCISE IT'S DESCRETION UNDER §1385(a)' AND STRIKE HIS
PRIOR CONVICTION: AT 171; IN 2002 PETITIONER WAS CHARGED WITH
SIX STRIKE PRIORS: ONE INFORMATION CHARGING SIX RESIDENTIAL
BURGLARIES. PETITIONER'S CONDUCT AND ROMERO: WHILE NUMEROUS
NONE OF PETITIONER'S OFFENSES WERE PARTICULARY SERIOUS. NONE
INVOLVED VIOLENCE. ALL WERE ESSENTIALLY PETTY THEFTS COMMITTED
INSIDE HOUSES TO SUPPORT PETITIONER'S DRUG HABIT. PETITIONER'S
ROMERO MOTION NOTED THAT PETITIONER SUFFERED SIX CONVICTIONS
FOR BURGLARY ON MAY 20TH 2002. PETITIONER'S OTHER TWO FELONY
CONVICTIONS WERE FOR POSSESSION OF A CONTROLLED SUBSTANCE, AND
PETITIONER HAD SIX MISDEMEANOR CONVICTIONS DRUG-RELATED
OFFENSES AND ONE CONVICTION FOR PETTY THEFT. (CT 175.) PETITIONER'S
OFFENSES WERE NOT VIOLENT. (CT 179.) PETITIONER TOLD THE PROBATION
OFFICER THAT HE COMMITTED THE BURGLARIES BY TAKING SMALL ITEMS,
OR PETTY CASH TO SUPPORT HIS DRUG HABIT. (CT 220) THE PROBATIONERS
OFFICER'S OWN RESEARCH CONFIRMED PETITIONER'S STATEMENT ACCORD-
ING TO THE PROBATION REPORT HIS FIRST TWO BURGLARIES INVOLVED
ENTERING A HOUSE THROUGH A "DOGGIE DOOR", AND TAKING A BICYCLE
FROM A GARAGE. (CT 222.) THE THIRD BURGLARY INVOLVED ENTER-
ING A HOUSE THROUGH A UNLOCKED SCREEN DOOR, DRINKING SOME
ALCOHOL, AND STEALING JEWELRY, COINS AND CHECKS. (Ibid.)

b. Supporting cases, rules, or other authority:

PEOPLE V. ROMERO (96) 3 C 4497; PEOPLE V. WILLIAMS (98) 17 C 4148, 161
PEOPLE V. CLUFF 87 CA 4 991. 997;
PEOPLE V. MCGLOTHIN (98) 67 CA 4468, 474;

MC-275 [Rev. July 1, 2005]              PETITION FOR WRIT OF HABEAS CORPUS

a. SUPPORTING FACTS: CONTINUED

IN THE FOURTH BURGLARY, HE ENTERED A HOUSE BY CUTTING A SCREEN OFF A WINDOW AND STOLE CASH, COMPACT DISCS AND LIQUOR. (Ibid.) THE FIFTH BURGLARY INVOLVED BREAKING A WINDOW, ENTERING THE HOUSE AND TAKING TWO COIN PURSES. (Ibid) THE SIXTH BURGLARY INVOLVED ENTERING A HOUSE THROUGH AN UNLOCKED SLIDING DOOR AND TAKING WATCHES "WALKMANS" AND COINS. (CT 223.) PETITIONER HAD BEEN OUT OF CUSTODY FOR TWO MONTHS WHEN THE CURRENT OFFENSE OCCURED. THE CURRENT OFFENSES FIT THIS SAME PATTERN. THUS, WHILE BREAKING INTO RESIDENCES IS CERTAINLY SERIOUS, IN ESSENCE PETITIONER HAS BEEN SENTENCED TO PRISON FOR AT LEAST 30 YEARS FOR A SERIES OF PETTY THEFTS FROM RESIDENCES IN WHICH IN HE NEVER CONFRONTED ANYONE AND NEVER COMMITTED ANY VIOLENCE. HIS TRUE CRIME IS BEING A DRUG-ADDICT AND HAVING SERIOUS MENTAL PROBLEMS. IT IS TRUE THAT PETITIONER NEVER GOT ON HIS FEET AFTER HIS PRIOR RELEASE FROM PRISON, THE ROMERO NOTED THAT AT THE TIME OF THE OFFENSE, PETITIONER WAS WORKING AS A LANDSCAPER FOR ROOM



a. SUPPORTING FACTS CONTINUED

AND BOARD. (CT 175.) IT NOTED THAT PETITIONER HAS A SERIOUS MENTAL CONDITION HAVING BEEN DIAGNOSED AS BEING BI-POLAR AND HAS A SERIOUS DRUG AND ALCOHOL PROBLEM. (CT 175.) AT THE TIME OF THE OFFENSE PETITIONER WAS SUFFERING FROM DRUG WITHDRAWAL, SEVERE DEPRESSION, AND THOUGHTS OF SUICIDE (CT 175.) THE MOTION FURTHER NOTED THAT PETITIONER'S CHILDHOOD WAS SEVERELY DISRUPTED BY HIS PARENTS DIVORCE, HIS MOTHER'S ALCOHOLISM AND HIS MOTHER'S SERIAL ABUSIVE RELATIONSHIPS. (CT 176.) BY AGE 16 PETITIONER WAS ADDICTED TO ALCOHOL AND DRUGS (CT 176-177) PETITIONER HAS MADE A NUMBER OF UNSUCCESSFUL EFFORTS TO DEAL WITH HIS ADDICTIONS. (CT-177-178.) HE ACKNOWLEDGED TO THE PROBATION OFFICER THAT IF HE HAD SUCCEEDED IN CASHING THE CHECK HE WOULD HAVE USED THE MONEY TO BUY HEROIN (CT 220.) DURING PETITIONER'S PRIOR INCARCERATION, HE WAS A MODEL PRISONER AT A FIRE CAMP. (CT 178.) UPON HIS RELEASE, HE ENROLLED IN A TWELVE-STEP PROGRAM, AND THE SANTA CRUZ BIBLE CHURCH. HOWEVER, HIS MENTAL ILLNESS CAUGHT UP WITH HIM AND HE RESUMED USING DRUGS. (CT 178·179.)

a. SUPPORTING FACTS: CONTINUED

IN FEBUARY 2004, HE WAS ADMITT-
ED TO EMERGENCY PSYCHIATRIC SERVICES IN
SANTA CLARA AND AGAIN PRESCRIBED CELEXA &
BUSPAR FOR HIS BIPOLAR DISORDER. (CT 179.)
MOREOVER, EVEN THE VICTIM SHOWED COMPASS-
ION FOR PETITIONER. SHE DID NOT SEEK ANY
RESTITUTION. (CT 219.) ACCORDING TO THE PROBA-
TION REPORT, "SHE DOES NOT WANT TO MAKE A
STATEMENT TO THE COURT AS SHE DOES NOT
WANT TO BE AN INSTRUMENT IN THE SENTENCE
ING ASPECT OF THIS CASE". (CT 219.) APPARENTLY,
SHE DID NOT WANT TO BE AN INSTRUMENT OF
SENDING HIM TO PRISON FOR LIFE. BUT FOR THE
ENTERING INTO MS. JOHNSTON'S RESIDENCE (FOR
WHICH THERE IS INSUFFICIENT EVIDENCE AS SET
FORTH IN DIRECT APPEAL, THE CURRENT OFFENSE
IS MINOR BY ANY CALCULATION. APPEALLANT STOLE
A SMALL AMOUNT OF CASH AND SOME BLANK CHECKS
THAT HE UNSUCCESSFULLY TRIED TO CASH. HE HAS
BEEN SENTENCED TO LIFE IN PRISON FOR SUCCESSFULLY
TAKING $8.00 - $10.00, PETITIONER'S CRIME IS ONLY A
SERIOUS THREAT TO SOCIETY IN THE ABSTRACT.
IN REALITY, HE HAS NEVER CONFRONTED ANY-
ONE, ENGAGED IN VIOLENCE, OR DONE MORE
MORE THAN MINOR HARM TO ANYONE BUT HIM-
SELF. THE TOTAL SUM OF HIS THEFTS IS LIKELY
LESS THAN $1000. IN EVALUATING THE SEVERITY

6-0 OF 7

a. SUPPORTING FACTS: CONTINUED

OF PETITIONER'S OFFENSE, THE COURT SHOULD CONSIDER THAT THE OFFENSE WAS A NON-VIOLENT CRIME PRESENTING A LOW DEGREE OF DANGER TO SOCIETY. THE FACT REMAINS THAT PETITIONER HAS ALWAYS MANAGED TO AVOID VIOLENCE, AND HAS ALWAYS STOLEN ITEMS OF LITTLE VALUE. HIS CURRENT CASE FOLLOWS THAT SAME PATTERN. IT IS REALLY BEYOND DISPUTE THAT PETITIONER'S THREE STRIKES SENTENCE WAS BASED ALMOST EXCLUSIVELY ON HIS PRIOR OFFENSES. IN RESPONSE TO APPEALLANT'S ROMERO MOTION, THE PROSECUTOR EMPHASIZED PETITIONER'S PRIOR RECORD(RT 351) EVEN THE TRIAL COURT DID NOT WANT TO SENTENCE PETITIONER TO 30 YEARS TO LIFE. IT WANTED TO SENTENCE PETITIONER TO TO 25 YEARS TO LIFE, BUT WAS STATUTORILY BARRED FROM DOING SO. (RT's 355-356.)

B. THE MAJORITY OF THE COURT OF APPEAL WAS TROUBLED BY PETITIONER'S SENTENCE".

THE MAJORITY OF THE COURT OF APPEAL WAS TROUBLED BY THE SENTENCE IMPOSED IN THIS CASE. DEFENDANT'S MOST TROUBLING CONTENTION IS THAT THE SENTENCE OF 30 YEARS TO LIFE FOR THEFT OF A PURSE, THE CONTENTS OF WHICH WERE RETURNED TO THEIR OWNER EXCEPT FOR $8-$10.00 AND A CHECKBOOK, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT.

(Exh. 1, p.6)    6-P OF 7

a. SUPPORTING FACTS: CONTINUED

. . .            WE ARE NOT INSENSATE TO
DEFENDANT'S ARGUMENTS CONCERNING HIS
OWN MITIGATING BACKGROUND AND MENTAL
CONDITION, OR THOSE CONCERNING THE OVER-
ALL WISDOM OF THE "THREE STRIKES" LAW AS
CURRENTLY IN EFFECT. WE CANNOT HELP BUT NOTE
THAT ALL OF DEFENDANT'S VICTIM'S COULD BE
MADE WHOLE MANY TIMES OVER WITH THE COST
OF ONE YEAR'S INCARCERATION OF DEFENDANT.
NOR CAN WE OVERLOOK THE IMPAIRMENT OF
SOME PENOLOGICAL OBJECTIVES THAT CAN OCCUR
WHEN SENTENCE INFLATION BLURS THE DIS-
TINCTION BETWEEN A CHRONIC THIEF WHO
SNATCHES A PURSE FROM A DINNING ROOM
TABLE AND THE PERPETRATOR OF A SECOND-DE-
GREE MURDER. BUT SUCH CONSIDERATIONS DO
NOT FURNISH ANY BASIS TO INVALIDATE A
SENTENCE SUCH AS THIS ONE ON THE GROUND
THAT IT CONSTITUTES CRUEL AND UNUSUAL PUN-
ISHMENT AS CONTEMPLATED BY OUR CONSTITU-
TIONS. THE LAW MAY BE COUNTERPRODUCTIVE,
EXCESSIVELY EXPENSIVE, EVEN FOOLISH, BUT
THE ELECTORATE HAS SPOKEN CLEARLY ON THE
SUBJECT, AND WE CANNOT SAY THAT THE PRESENT
JUDGMENT IS GROSSLY DISPROPORTIONATE TO
THOSE METED OUT TO OTHER SIMILARLY SITUATED
OFFENDERS OR OTHERWISE VIOLATES CONSTITUTIONAL
CONSTRAINTS
  (EXh. 1.P.9)              6-Q OF 7          page 11 A of 6

a. SUPPORTING FACTS: CONTINUED

THE CONCEARNS EXPRESSED BY THE COURT OF APPEAL ARE VALID. THE DISTRICT ATTORNEY OF SANTA CLARA COUNTY HAS OPTED TO ~~WAR~~ WARE-HOUSE PETITIONER IN THE DEPARTMENT OF CORRECTIONS AND REHABILITATION FOR THE REST OF HIS LIFE IN LIEU OF PROVIDING HIM WITH THE MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES HE NEEDS. FOR THE REASONS EXPRESSED BY THE MAJORITY OF THE COURT OF APPEAL AND THOSE SET FORTH BELOW, PETITIONER RESPECTFULLY SUBMITS THAT THIS COURT SHOULD GRANT THIS PETITION AND DETERMINE WHETHER A 30 TO LIFE SENTENCE IS UNREASONABLE UNDER THE FACTS OF THIS CASE.

7. Ground 6

THE STATE AND FEDERAL CONSTITUTION PROHIBITIONS ~~PROHIBITS~~ AGAINST DOUBLE JEOPARDY PREVENT IMPOSITION OF POTENTIAL LIFE SENTENCES FOR RESIDENTIAL BURGLARY AND RECIEVING STOLEN PROPERTY

a. Supporting facts:

AT THE APRIL 1ST, 2005 HEARING ON PETITIONER'S ROMERO MOTION, COUNSEL ARGUED INTRA ALI, THAT PETITIONER "CERTAINLY SERVED HIS TIME" IN PRISON FOR HIS PRIOR STRIKE, RAISING DOUBLE JEOPARDY CONCERNS RELATIVE TO THE POTENTIAL LIFE SENTENCES IMPOSED IN THE INSTANT CASE (CT 258) THE TRIAL COURT DID NOT ADDRESS THE DOUBLE JEOPARDY ISSUE IN THE PRESENT CASE.

b. Supporting cases, rules, or other authority:

U.S. CONST. AMEND. 5 & 14, BENTON V. MARYLAND (1960) 395 U.S. 784, 794 OREGON V. ~~KENNEDY~~ KENNEDY (82) 456 US 667, 671; Cal. CONST. art 1, §15. CURRY V. SUPERIOR COURT (1970) 2 (3 707, 712-713; N.C. V. PEARCE (69) 395 US 711 717; U.S. V. DIXON (93) 509 U.S. 688, 696; GREEN V. U.S. (57) 355 U.S. 184, 187-188; GRYGER V. BURKE (48) 334 U.S. 728, 732; WITTE V. US (95) 515 US 389; MULLANEY V. WILBER (75) 421 U.S. 684, 700; MCMILLAN V. PENNSYLVANIA (86) 477 US. 79, 88; U.S. V. BOOKER (05) 543 U.S. (125 S. Ct. 786; BLAKELY V. WASHINGTON (04) 542 US.

cont from back

b. SUPPORTING CASES, RULES, OR OTHER AUTHORITY: CONTINUED

—[124 S. Ct. 2531; SOLEM V. HELM 463 U.S. at 297, fn. 21; PEOPLE V. CARMONY 127 CA 4 at P 1075; RIGGS V. CA (99) 525 U.S. 1114 (OPN. OF STEVENS, J; ROMIREZ V. CASTRO 365 F 3 at p. 761

6-T OF 7

7. Ground 7

THE NEXT 3 ISSUES ARE BEING RAISED IN ADDITION TO HABEAS
AS APPLICATION TO RECALL THE REMITTUR AND DUE TO CHANGE IN FACTS,
AND TO PUT STATE ON NOTICE OF FEDERAL AUTHORITY.

a. Supporting facts:

EVELYN JOHNSTON IS 82 YEARS OLD AND LIVES ALONE ON BROOKWOOD
LANE IN SARATOGA WHERE SHE OWNS A NUMBER OF RENTAL PROPERTIES. (RT 34)
SHE KNEW PETITIONER BECAUSE HE LIVED IN ONE OF HER PROPERTIES WITH
HIROMI HIGASHI. (RT 36.) PRIOR TO THE INCIDENT, SHE HAD TALKED WITH
PETITIONER TWICE INCLUDING ONE OCCASION WHEN PETITIONER CAME TO
HER HOUSE, KNOCKED ON THE DOOR AND ASKED TO BORROW $20. (RT 37.)

JOHNSTON DID NOT HAVE $20 BUT FELT PRESSURED TO LOAN THE
MONEY TO PETITIONER. (RT 39.) SHE TOOK PETITIONER TO BANK OF AMERICA
IN SARATOGA IN HER CAR, WROTE A CHECK FOR $20, CASHED IT, GAVE THE
MONEY TO PETITIONER AND DROPPED HIM OF AT THE BUS STATION (RT 39-41,
43.) SHE GOT AN I.O.U. FROM PETITIONER AND WAS PAID BACK LATER
BY HIGASHI. (RT 42.)

ON MARCH 2ND 2004, JOHNSTON WENT SHOPPING BETWEEN NOON
AND 2:00 P.M. (RT 44.) SHE RETURNED HOME AND STARTED COOKING. (RT 44)
HER FRONT DOOR WAS OPEN TO AIR OUT THE HOUSE AND HER SCREEN DOOR
MAY HAVE BEEN AJAR. (RT 44-45.) SHE LEFT HER BLACK PURSE ON THE
DINING ROOM TABLE (RT 46.) SHE SPENT 60-90 MINUTES COOKING.
ALTHOUGH HER HEARING IS GOOD, SHE DID NOT HEAR ANYTHING FROM

b. Supporting cases, rules, or other authority:

Kellotat v. Cupp (9th Cir. 1983) 719 F.2d 1027, 1029;
Schiers v CA (9th Cir. 1964) 333 F.2d 173, 177; California
Rules of Ct. 26(c) and 29.6(c); P v Mutch (1971) 4 Cal.3d
389, 392; Duncan v Henry (1995) 513 US 364; Gary v
Netherland (1996) 518 US 152; and Baldwin v Reese (2004)
541 U.S. 27

CONTINUED from p. 6-U

THE FRONT OF THE HOUSE. (RT 47.) JOHNSTON BECAME WORRIED ABOUT HER PURSE AND WENT TO THE DINING ROOM AND DISCOVERED THAT HER PURSE WAS MISSING. (RT 50.) AFTER SEARCHING THE HOUSE FOR THE PURSE FOR 20 MINUTES SHE CALLED 911. (RT 51.) SHE GAVE A STATEMENT TO THE POLICE SAYING THAT SHE SUSPECTED PETITIONER. (RT 51-52.)

ON MARCH 4, 2004, HER PURSE WAS RETURNED. IT WAS CLEAN AND UNDAMAGED. (RT 52, 54.) HER CHECK BOOK AND SMALL AMOUNT OF CASH WERE THE ONLY THINGS MISSING AND WERE NEVER RETURNED. (RT 53.) THE MISSING CHECKS WERE NEVER USED. (RT 55.)

ARLEIGH OCHINERO WENT TO THE BANK OF AMERICA IN SARATOGA AT ABOUT 3.00 P.M. ON MARCH 2ND, 2004. (RT 83, 85.) AFTER HE FINISHED USING THE ATM, HE WAS APPROACHED BY PETITIONER WHO ASKED HIM IF HE WOULD CASH A CHECK FOR HIS GRANDMOTHER. (RT 91-92.) OCHINERO COULD SEE THE NAME EVELYN JOHNSTON PRINTED ON THE CHECKS. (RT 92.) OCHINERO DECLINED PETITIONER'S REQUEST. (RT 93.)

AS OCHINERO LEFT THE BANK, HE SAW PETITIONER WALKING DOWN BIG BASIN WAY. (RT 95.) OCHINERO WAS SUSPICIOUS, SO HE CALLED 911. (RT 94.) HE GAVE THE OPERATOR A PHYSICAL DESCRIPTION THAT INCLUDED A STAR SHAPED TATTOO. (RT 98-99.) ON MARCH 2ND 2004, OCHINERO WAS PICKED UP BY DEPUTIES AND TAKEN TO SEE PETITIONER WHO WAS IN CUSTODY. (RT 100.) OCHINERO IDENTIFIED PETITIONER AS THE PERSON WHO

CONTINUED from p. 6-V

APPROACHED HIM AT THE BANK. (RT 101.)
        THE PARTIES STIPULATED THAT MRS.
JOHNSTON CALLED 911 AT ~~████~~ 1:55 P.M. ON
MARCH 2ND 2004, AND THAT OCHINERO CALLED 911
AT 2:52 THE SAME DAY. (RT 109.)

        MASSAOUD MOGHADAN, A POSTAL SERVICE
EMPLOYEE FOUND JOHNSTON'S PURSE IN A MAILBOX
NEAR THE SHERIFF'S DEPARTMENT IN DOWNTOWN
SARATOGA (RT 73.) THE PARTIES STIPULATED THAT
DEPUTY JEFFREY NOVICH RETRIEVED THE PURSE ON
MARCH 4TH 2004, AND RETURNED IT TO MS. JOHNSTON.
(RT 82.) DEPUTY KEVIN MUNCY SEARCHED PETITIONER
AND HIS HOUSE BUT FOUND NO CHECKS OR CASH. (RT 222.)

        EVIDENCE IN SUPPORT OF PRIOR CONVICTIONS.
THE PROSECUTOR OFFERED EXHIBITS 3, 4, 5, AND 6 IN
IN SUPPORT OF PETITIONER'S PRIOR CONVICTIONS.
(CT 149-163; RT 330-331.)

6-W OF 7

7. Ground  A

THERE IS CONSTITUTIONALLY INSUFFICIENT EVIDENCE TO SUSTAIN
PETITIONER'S BURGLARY CONVICTION UNDER BOTH STATE AND FEDERAL
CONSTITUTIONS PETITIONER HAS A DUE PROCESS RIGHT TO BE CONVICTED
ON THE BASIS OF SUFFICIENT EVIDENCE.

a. Supporting facts:

1.) THE EVIDENCE IN THIS CASE IS INSUFFICIENT TO ESTABLISH
THAT PETITIONER ENTERED MS. JOHNSTON'S HOUSE. PETITIONER WAS
CHARGED WITH AND CONVICTED OF BOTH BURGLARY AND RECIEVING
STOLEN PROPERTY. (CT 43-47, 147-148, 166.)

HERE, ABLEIGH OCHINERO CLEARLY IDENTIFIED PETITIONER
AS BEING IN POSSESSION OF MS. JOHNSTON'S CHECKS. (RT 91-92)
THE UNRESOLVED ISSUE WAS HOW PETITIONER CAME INTO POSSESSION
OF THE CHECKS. THE EVIDENCE THAT PETITIONER OR ANYONE ELSE FOR
THAT MATTER, ACTUALLY ENTERED MS. JOHNSTON'S HOUSE WAS NON-
EXISTENT.

MS. JOHNSTON SAID THAT SHE LEFT HER FRONT DOOR OPEN
WHILE SHE WAS IN THE KITCHEN COOKING. (RT 44.) SHE SAID SHE
MAY HAVE LEFT THE SCREEN DOOR AJAR BECAUSE SHE ENTERED THE
HOUSE WITH BOTH ARMS LOADED WITH GROCERIES AND COULD NOT
SHUT THE DOOR. (RT 45.) SHE SAID SHE LEFT HER PURSE ON THE
DINING ROOM TABLE. (RT 46.) SHE SAID THAT HER HEARING IS
VERY GOOD AND HAD NO TROUBLE HEARING AT ALL. (RT. 47.) HER
FLOOR WAS CARPETED AND SHE SAID THAT SHE WOULD NOT HEAR

b. Supporting cases, rules, or other authority:

IN RE WINSHIP (1970) 397 U.S. 358, 364; HERRERA V. COLLINS
(1993) 506 U.S. 390, 402; JACKSON V. VIRGINIA (1979) 443 U.S.
307, 319

A 400 POUND MAN WALKING ON IT. (RT 64.) SHE DID NOT HEAR ANYONE KNOCK AT HER DOOR OR ASK IF SHE WAS HOME. (RT 48.) HER HOUSE WAS SMALL AND THERE IS NO DOOR BETWEEN THE KITCHEN AND THE DINING ROOM. (RT 49, 62.) SHE COULD NOT SEE FROM THE KITCHEN TO THE DINING ROOM. (RT 62.)

WHEN SHE WENT TO LOOK FOR HER PURSE, SHE "SEARCHED THE HOUSE", FOR 20 MINUTES TO MAKE SURE SHE HAD NOT PUT THE PURSE ELSE-WHERE. (RT 50-51.) SHE COULD NOT FIND HER PURSE. (RT 50.)

ACCORDING TO JOHNSTON, IT HAD BEEN RAINING THE DAY BEFORE (RT 63.) THERE WERE NO FOOTPRINTS ON HER CARPET. (RT 64.) THERE WERE TWO GARDENERS WORKING IN HER YARD OUTSIDE AT THE TIME. (RT 64.) SHE THOUGHT SHE WROTE THE GARDENER A CHECK WHEN SHE FIRST GOT HOME AND PUT THE CHECK ON THE DASH OF HIS VEHICLE. (RT 65.) THE GARDENER HAD WORKED FOR HER FOR 18 YEARS. (RT 69.)

ALTHOUGH MS. JOHNSTON THOUGHT SHE LEFT HER PURSE ON THE DINING ROOM TABLE, SHE WAS NOT SURE. SHE SPENT 20 MINUTES LOOKING THROUGH HER HOUSE WHEN SHE COULD NOT FIND IT ON THE DINING ROOM TABLE SHE ALSO TESTIFIED THAT SHE COULD NOT LATCH HER SCREEN DOOR BECAUSE HER ARMS WERE FULL OF GROCERIES. THAT MS. JOHNSTON BROUGHT HER PURSE INTO THE

HOUSE IS NOT FIRMLY ESTABLISHED BY THIS EVIDENCE. SHE COULD HAVE LEFT IT IN HER CAR WHEN SHE BROUGHT THE GROCERIES IN. IF HER ARMS WERE FULL OF GROCERIES AND COULD NOT CLOSE HER SCREEN DOOR, SHE ALSO COULD NOT CARRY HER PURSE. MOREOVER, ALTHOUGH SHE THOUGHT SHE WROTE HER GARDENER A CHECK AND TOOK THE CHECK OUT TO HIS VEHICLE, SHE COULD NOT SAY DEFINATELY THAT SHE DID SO.

IN ADDITION, HER HOUSE WAS SMALL AND HER HEARING WAS GOOD. NEVERTHELESS, SHE DID NOT HEAR THE SCREEN DOOR OPEN OR ANYONE IN THE DINING ROOM A SHORT DISTANCE AWAY. THERE WERE NO FOOTPRINTS ON THE CARPET.

THERE WAS NO EVIDENCE PLACING PETITIONER AT THE SCENE. MS. JOHNSTON ACTUALLY ASKED HER GARDENER IF HE HAD SEEN ANYONE NEAR THE HOUSE. (RT 70.) HOWEVER, THE PROSECUTOR SUCCESSFULLY OBJECTED TO ANY ANSWER ABOUT WHAT THE GARDENER SAID ON THE BASIS OF HEARSAY. (RT 70.) THUS, THE ONLY PEOPLE KNOWN TO BE NEAR THE HOUSE WERE THE GARDENER AND HIS ASSISTANT.

BASED ON THE FOREGOING EVIDENCE, IT CANNOT BE SAID THAT ANYONE ACTUALLY ENTERED MS. JOHNSTON'S HOUSE.

THE COURT OF APPEAL CONCLUDED THAT PETITIONER WAS MERELY ARGUING THE REASONABLE

INFERENCES SUPPORTED BY THE EVIDENCE BUT NOT THE SUFFICIENCY OF THE EVIDENCE. COUPLE THIS WITH INEFFECTIVE ASSISTANCE OF COUNSEL IN NOT INVESTIGATING OR PRESENTING EVIDENCE THAT WAS OTHERWISE AVAILABLE TO DEMONSTRATE PETITIONER COULD NOT HAVE BURGLARIZED AS PRESENTED IN GROUND 2.

THE COURT OF APPEAL REJECTED PETITIONER'S CLAIM FOR THE FOLLOWING REASON.

[PETITIONER'S ARGUMENT] WOULD NO DOUBT HAVE SUPPORTED AN ARGUMENT TO THE JURY— THOUGH NONE WAS MADE— BUT IT HARDLY SUPPORTS DEFENDANT'S ARGUMENT THAT HER TESTIMONY WAS SPECULATIVE. (OPINION PAGE 4.)

PETITIONER RESPECTFULLY SUBMITS THAT THIS CONCLUSION CANNOT BE SUSTAINED IN LIGHT OF THE REVIEW OF THE EVIDENCE SET FORTH ABOVE.

2.) THE PREJUDICE TO PETITIONER OF BEING ERRONEOUSLY CONVICTED OF BURGLARY RATHER THAN RECIEVING STOLEN PROPERTY IS SUBSTANCIAL. IT IS TRUE THAT BECAUSE THIS WAS A THREE STRIKES CASE, THE RECIEVING STOLEN PROPERTY CONVICTION WAS IN ITSELF SUFFICIENT TO SUBJECT PETITIONER TO AN INDETERMINATE 25-YEAR-TO-LIFE-TERM. HOWEVER, RECIEVING STOLEN PROPERTY (PEN. CODE, § 496) IS NOT A SERIOUS FELONY WITHIN THE MEANING OF PENAL CODE SECTION 667, Subd (a)

BECAUSE IT IS NOT LISTED IN PENAL CODE SECTION 1192.7, Subd(c.) THUS IF PETITIONER HAD BEEN PROPERLY CONVICTED OF RECIEVING STOLEN PROPERTY AND AQUITTED OF BURGLARY, HIS CURRENT TERM OF 25 YEARS TO LIFE PLUS FIVE YEARS WOULD HAVE BEEN 25 YEARS TO LIFE, A NET REDUCTION OF FIVE YEARS. WHILE THIS PROPER SENTENCE WOULD HAVE STILL BEEN EXCESSIVELY SEVERE AS SET FORTH BELOW IN ~~SUBPART~~ SUBPART III, IT WOULD HAVE BEEN MORE CONSISTENT WITH PETITIONER'S ACTUAL CONDUCT IN THIS CASE. IT IS ALSO THE SENTENCE THAT THE TRIAL COURT ACTUALLY WANTED TO IMPOSE. (RT 355-356.)

7. Ground **B.**

THE INSTRUCTION UNDER CALJIC 2.15 ON THE INFERENCE OF GUILT OF BURGLARY OR RECIEVING STOLEN PROPERTY FROM POSSESSION OF RECENTLY STOLEN PROPERTY WAS PREJUDICIAL ERROR BASED ON THE EVIDENCE IN THIS CASE UNDER DUE PROCESS OF THE LAW AS GUARANTEED BY THE FOURTEENTH AMENDMENT TO THE U.S. CONSTITUTION.

a. Supporting facts:

GIVING CALJIC 2.15 IS IMPROPER WHERE THERE IS INSUFFICENT EVIDENCE OF BURGLARY. PETITIONER WAS CHARGED WITH, AND CONVICTED OF, BOTH BURGLARY AND RECIEVING STOLEN PROPERTY. (CT 43-47, 147-148, 166) THE JURY WAS INSTRUCTED WITH CALJIC NO. 215 ON THE INFERENCE OF GUILT OF BURGLARY OR RECIEVING STOLEN PROPERTY FROM POSSESSION OF RECENTLY STOLEN PROPERTY. (**CT** 112; RT 276) PETITIONER OBJECTED TO THE INSTRUCTION AS AN UNCONSTITUTIONAL LOWERING OF THE PROSECUTION'S BURDEN OF PROOF. (RT 230) THE INSTRUCTION WAS ERRONEOUS AND MISLEADING.

AS NOTED ABOVE IN SUBPART **A**, THE EVIDENCE WAS PLAINLY INSUFFICIENT TO CONVICT PETITIONER OF BURGLARY. HOWEVER ARLEIGH OCHINERO CLEARLY IDENTIFIED PETITIONER AS BEING IN POSSESSION OF MS. JOHNSTON'S CHECKS (RT 91-92) IN THIS CONTEXT, THE PREJUDICE OF GIVING CALJIC NO 215 IS CLEAR.

THE JURY HAD CLEAR EVIDENCE OF RECIEVING STOLEN PROPERTY. IT WAS INSTRUCTED THAT IT ONLY NEEDED TO FIND "SLIGHT" ADDITIONAL EVIDENCE. IN THIS CASE, THE SLIGHT ADDITIONAL EVIDENCE COULD HAVE BEEN THAT MS. JOHNSTON FELT PRESSURED TO LOAN

b. Supporting cases, rules, or other authority:

ESTELLE V. McGUIRE (1991) 502 U.S. 62, 72; VICTOR V. NEBRASKA (1994) 511 U.S. 1; P. V. MORRIS (1988) 46 Cal. 3d 1; P. V. FENO (1984) 154 Cal. App. 3d 71; P. V. KOBRIN (1995) 11 Cal. 4TH 416; IN RE SASSOUNIAN (1995) 9 Cal 4TH 535, 543; P. V. JOHNSON (1993) 6 Cal. 4TH 1; P. V. Valenzuela (1985) 175 C.A. 3d 381/388; P. V. Rhoden (1972) 6 Cal. 3d 519, 520, P. V. Flood (1998) 18 Cal. 4TH 470, and In re Serrano (1995) 10 Cal. 4TH 447, 458.

PETITIONER #20. IT COULD HAVE BEEN THAT THERE WAS NO EVIDENCE THAT PETITIONER HAD A JOB. WHATEVER SLIGHT ADDITIONAL EVIDENCE THE JURY RELIED ON, IT COULD NOT HAVE RELIED ON SLIGHT ADDITIONAL EVIDENCE OF ENTRY BECAUSE THERE WAS NO EVIDENCE OF ENTRY.

HAD THE JURY NOT BEEN TOLD THAT THE SLIGHTEST EVIDENCE IN ADDITION TO THE POSSESSION OF RECENTLY STOLEN PROPERTY WAS SUFFICIENT TO CONVICT PETITIONER OF BURGLARY, IT IS HIGHLY UNLIKELY THAT THE JURY WOULD HAVE ADDITIONALLY CONVICTED PETITIONER OF BURGLARY. **NO EVIDENCE** LINKED PETITIONER TO THE HOUSE THAT DAY. HE WAS NOT SEEN OUTSIDE THE HOUSE. IT IS NOT EVEN CLEAR THAT THE PURSE WAS INSIDE THE HOUSE. IT ONLY MAY HAVE BEEN IN MS. JOHNSTON'S CAR.

2.) THE COURT OF APPEAL REJECTED PETITIONER'S CLAIM BASED ON ITS ERRONEOUS CONCLUSION IN RESPONSE TO CLAIM NO. 1 THAT THE EVIDENCE OF BURGLARY WAS SUFFICIENT.

THE COURT OF APPEAL REJECTED PETITIONERS CLAIM FOR THE FOLLOWING REASON.

DEFENDANT ALSO CITES *PEOPLE V. JOHNSON* (1993) 6 Cal. 4TH 1, 36, FOR THE PROPOSITION THAT GIVING CALJIC 2.15 IS IMPROPER WHERE THE EVIDENCE IS "INSUFFICIENT THAT A BURGLARY ACTUALLY TOOK PLACE." BUT DEFENDANT'S ATTEMPT TO APPLY THAT PROPOSITION HERE DEPENDS ON THE

PREMISE THAT THE EVIDENCE WAS PLAINLY INSUFFICIENT TO ESTABLISH THAT MS. JOHNSTON'S PURSE WAS TAKEN FROM INSIDE HER HOUSE AS OPPOSED TO FROM HER CAR OR FRONT PORCH" WE HAVE REJECTED THAT PREMISE IN THE PREVIOUS SECTION. ACCORDINGLY, NO ERROR APPEARS IN THE GIVING OF CALJIC 2.15 (EXH. 1 p. 6.)

AS SET FORTH ABOVE, THE EVIDENCE OF ENTRY WAS INSUFFICIENT AND CALJIC 2.15 WAS IMPROPERLY GIVEN.

3.) THE PREJUDICE TO PETITIONER OF ERRONEOUSLY GIVEN CALJIC 2.15 TO THE JURY IS SUBSTANCIAL.

**FINALLY**, AS ALSO NOTED ABOVE, IT IS IMPORTANT TO CONSIDER THAT THE ERRONEOUS CONVICTION OF BURGLARY RESULTING FROM THE IMPROPER LIGHTENING OF THE BURDEN OF PROOF BY CALJIC NO. 2.15 HAD IMPORTANT PRACTICAL SIGNIFICANCE IN THIS CASE. IT RESULTED IN PETITIONER BEING CONVICTED OF THE SERIOUS FELONY OF BURGLARY, WHICH RESULTED IN AN ADDITIONAL FIVE YEARS PURSUANT TO PENAL CODE SECTION 667, SUBD(a.) THUS, IF PETITIONER HAD BEEN PROPERLY CONVICTED OF RECIEVING STOLEN PROPERTY AND ACQUITTED OF BURGLARY, HIS CURRENT TERM WOULD HAVE BEEN FIVE YEARS LESS.

ACCORDINGLY, FOR ALL THE REASONS SET FORTH ABOVE, PETITIONER'S CONVICTION FOR BURGLARY MUST

6-FF OF 7

BE REVERSED BECAUSE THE GIVING OF CALJIC 2.15 IMPERMISSIBLY ALLOWED THE JURY TO CONVICT PETITIONER OF BURGLARY BASED ON EVIDENCE FOUND TO BE TRUE BY LESS THAN THE REASONABLE DOUBT STANDARD. PETITIONER IN CORPORATES THE FACTS OF GROUNDS 2 AND 3 AS IF PRESENTED HERE.

7. Ground C

PETITIONER'S SENTENCE IS IN VIOLATION OF CRUEL AND UNUSUAL UNDER BOTH CALIFORNIA AND FEDERAL LAW BECAUSE THE MAJORITY OF THE COURT OF APPEAL WAS "TROUBLED" BY THIS SENTENCE.

a. Supporting facts:

1. THE MAJORITY OF THE COURT OF APPEAL WAS TROUBLED BY PETITIONER'S SENTENCE. THE MAJORITY OF THE COURT OF APPEAL WAS TROUBLED BY THE SENTENCE IMPOSED IN THIS CASE.

"DEFENDANT'S MOST TROUBLING CONTENTION IS THAT THE SENTENCE OF 30 YEARS TO LIFE FOR THEFT OF A PURSE, THE CONTENTS OF WHICH WERE RETURNED TO THEIR OWNER EXCEPT FOR EIGHT TO 10 DOLLARS AND A CHECKBOOK, CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT. (OPINION P. 6.)

"WE ARE NOT INSENSATE TO DEFENDANT'S ARGUMENTS CONCEARNING HIS OWN MITIGATING BACKGROUND AND MENTAL CONDITION, OR THOSE CONCEARNING THE OVERALL WISDOM OF THE "THREE STRIKES" LAW AS CURRENTLY IN EFFECT. WE CANNOT HELP BUT NOTE THAT ALL OF DEFENDANT'S VICTIM'S COULD BE MADE WHOLE MANY TIMES OVER WITH THE COST OF ONE YEAR'S INCARCERATION OF DEFENDANT. NOR CAN WE OVERLOOK THE IMPAIRMENT OF SOME PENOLOGICAL OBJECTIVES THAT CAN OCCUR WHEN SENTENCE INFLATION BLURS THE DISTINCTION BETWEEN A CHRONIC THIEF WHO SNATCHES A PURSE FROM A DINING ROOM TABLE AND THE PERPETRATOR OF A SECOND-DEGREE MURDER. BUT SUCH CONSIDERATIONS DO NOT FURNISH ANY BASIS TO INVALIDATE A SENTENCE SUCH AS THIS ONE, ON THE GROUND

b. Supporting cases, rules, or other authority:

GREGG V. GEORGIA (19,76) 428 U.S. 153, 173; SOLEM V. HELM (19,83) 463 U.S. 277, 284-295; IN RE LYNCH (19,82) 8 Cal. 3d 410, 424; ROBINSON V. CALIFORNIA (19,62) 370 U.S. 660; P. V. CARMONY (2005) 127 Cal. App. 4TH 1066, 1072;

THAT IT CONSTITUTES CRUEL AND UNUSUAL PUNISHMENT
AS CONTEMPLATED BY OUR U.S. CONSTITUTIONS. THE LAW
MAY BE COUNTERPRODUCTIVE, EXCESSIVELY EXPENSIVE,
EVEN FOOLISH, BUT THE ELECTORATE HAS SPOKEN CLEARLY
ON THE SUBJECT, AND WE CANNOT SAY THAT THE PRESENT
JUDGMENT IS GROSSLY DISPROPORTIONATE TO THOSE
METED OUT TO OTHER SIMILARY SITUATED OFFENDERS
OR OTHERWISE VIOLATES CONSTITUTIONAL CONSTRAINTS."
(OPINION   P.9.)

THE CONCEARNS EXPRESSED BY THE COURT OF
APPEAL ARE VALID. THE DISTRICT ATTORNEY OF SANTA-
CLARA COUNTY HAS OPTED TO WHAREHOUSE PETITIONER IN
THE DEPARTMENT OF CORRECTIONS AND REHABILITATION
FOR THE REST OF HIS LIFE IN LIEU OF PROVIDING HIM
WITH THE MENTAL HEALTH AND SUBSTANCE ABUSE SERVICES
HE NEEDS. FOR THE REASONS EXPRESSED BY THE MAJORITY
OF THE COURT OF APPEAL AND THOSE SET FORTH BELOW,
PETITIONER RESPECTFULLY SUBMITS THAT THIS COURT
SHOULD GRANT THIS PETITION AND DETERMINE WHETHER
A 30 YEAR TO LIFE SENTENCE IS UNREASONABLE UNDER
THE FACTS OF THIS CASE.

2.  .THE PENALTY IS DISPROPORTIONATE AS APPLIED TO THIS OFFENSE AND THIS OFFENDER. THE PENALTY IS EXCESSIVE IN LIGHT OF PETITIONER'S CONDUCT.

HERE, WHILE NUMEROUS, NONE OF PETITIONER'S OFFENSES WERE PARTICULARY SERIOUS. NONE INVOLVED VIOLENCE. ALL WERE ESSENTIALLY PETTY THEFTS COMMITTED INSIDE HOUSES TO SUPPORT PETITIONER'S DRUG HABIT. PETITIONER'S ROMERO MOTION NOTED THAT PETITIONER SUFFERED SIX CONVICTIONS FOR BURGLARY ON MAY 20, 2002. HIS OTHER TWO FELONY CONVICTIONS WERE FOR POSSESSION OF A CONTROLLED SUBSTANCE AND HE HAD SIX MISDEMEANOR CONVICTIONS FOR DRUG RELATED OFFENSES AND ONE CONVICTION FOR PETTY THEFT. (CT 175.) HIS OFFENSES WERE NOT VIOLENT. (CT 179.) PETITIONER TOLD THE PROBATION OFFICER THAT HE COMMITTED THE BURGLARIES BY TAKING SMALL ITEMS OR PETTY CASH TO SUPPORT HIS DRUG HABBIT. (CT 220.)

THE PROBATION OFFICER'S OWN RESEARCH CONFIRMED PETITIONER'S STATEMENT. ACCORDING TO THE PROBATION REPORT, HIS FIRST TWO BURGLARY STRIKES INVOLVED ENTERING A HOUSE THROUGH A "DOGGIE DOOR" AND TAKING A BICYCLE FROM A GARAGE. (CT 222.) THE THIRD BURGLARY INVOLVED ETERING A HOUSE THROUGH AN UNLOCKED SCREEN DOOR, DRINKING SOME ALCOHOL, AND STEALING JEWELRY, COINS, AND CHECKS. (Ibid) IN THE FOURTH BURGLARY, HE ENTERED A HOUSE BY CUTTING A SCREEN OFF A WINDOW AND

STOLE CASH, COMPACT DISCS AND LIQUOR. (Ibid) THE
FIFTH BURGLARY INVOLVED BREAKING A WINDOW,
ENTERING THE HOUSE AND TAKING TWO COIN PURSES.
(Ibid.) THE SIXTH BURGLARY INVOLVED ENTERING A
HOUSE THROUGH AN UNLOCKED SLIDING DOOR AND TAKING
WATCHES "WALKMANS" AND COINS. (CT 223) PETITIONER
HAD BEEN OUT OF CUSTODY FOR TWO AND ONE HALF MONTHS
WHEN THE CURRENT OFFENSE OCCURED. THE CURRENT
OFFENSES FIT THE SAME PATTERN.

THUS, WHILE BREAKING INTO RESIDENCES
IS CERTAINLY SERIOUS, IN ESSENCE PETITIONER HAS
BEEN SENTENCED TO PRISON FOR AT LEAST 30 YEARS
FOR A SERIES OF PETTY THEFTS FROM RESIDENCES IN
WHICH HE NEVER CONFRONTED ANYONE AND NEVER
COMMITTED ANY VIOLENCE. HIS TRUE CRIME IS BEING
A DRUG ADDICT AND HAVING SERIOUS MENTAL PROBLEMS.

IT IS TRUE THAT PETITIONER NEVER GOT ON
HIS FEET AFTER HIS PRIOR RELEASE FROM PRISON. THE
ROMERO MOTION NOTED THAT AT THE TIME OF THE OFFENSE,
PETITIONER WAS WORKING AS A LANDSCAPER FOR ROOM AND
BOARD. (CT 175.) IT NOTED THAT PETITIONER HAS A
SERIOUS MENTAL CONDITION HAVING BEEN DIAGNOSED
AS BEING BI-POLAR AND HAS A SERIOUS DRUG AND
ALCOHOL PROBLEM. (CT. 175.) AT THE TIME OF THE OFFENSE
PETITIONER WAS SUFFERING FROM DRUG WITHDRAWAL,
SEVERE DEPRESSION AND THOUGHTS OF SUICIDE. (CT. 175.)

"THE MOTION FURTHER NOTED THAT PETITIONER'S
CHILDHOOD WAS SEVERELY DISRUPTED BY HIS PARENTS

6-KK OF 7

DIVORCE, HIS MOTHER'S ALCOHOLISM, AND HIS MOTHER'S SERIAL ABUSIVE RELATIONSHIPS. (CT 176.) BY AGE 16 PETITIONER WAS ~~COMPLETED~~ ADDICTED TO ALCOHOL AND DRUGS. (CT 176-177.) PETITIONER HAS MADE A NUMBER OF UNSUCCESSFUL EFFORTS TO DEAL WITH HIS ADDICTIONS. (CT 177-178.) HE ACKNOWLEDGED TO THE PROBATION OFFICER THAT IF HE HAD SUCCEDED IN CASHING THE CHECK HE WOULD HAVE USED THE MONEY TO BUY HEROIN. (CT 220.)

DURING PETITIONER'S PRIOR INCARCERATION, HE WAS A MODEL PRISONER AT A FIRE-CAMP. (CT 178.) UPON HIS RELEASE, HE ENROLLED IN A TWELVE STEP PROGRAM AND THE SANTA-CRUZ BIBLE CHURCH. HOWEVER, HIS MENTAL ILLNESS CAUGHT-UP WITH HIM AND HE RESUMED USING DRUGS. (CT 178-179.) IN FEBUARY 2004, HE WAS ADMITTED TO EMERGENCY PSYCHRIATRIC SERVICES IN SANTA CLARA AND AGAIN PERSCRIBED CELEXA AND BUSPAR FOR HIS BI-POLAR DISORDER. (CT 179.) MOREOVER, EVEN THE VICTIM SHOWED COMPASSION FOR PETITIONER. SHE DID NOT SEEK ANY RESTITUTION. (CT 219.) ACCORDING TO THE PROBATION REPORT, "SHE DOES NOT WANT TO MAKE A STATEMENT TO THE COURT AS SHE DOES NOT WANT TO BE AN INSTRUMENT IN THE SENTENCING ASPECT OF THIS CASE. (CT 219.) APPARENTLY, SHE DID NOT WANT TO BE AN INSTRUMENT OF SENDING HIM TO PRISON FOR LIFE.

BUT FOR THE ENTERING INTO MS. JOHNSTON'S RESIDENCE FOR WHICH THERE IS INSUFFICIENT EVIDENCE

AS SET FORTH IN DIRECT APPEAL, THE CURRENT OFFENSE IS MINOR BY ANY CALCULATION. PETITIONER STOLE A SMALL AMOUNT OF CASH AND SOME BLANK CHECKS THAT HE UNSUCCESSFULLY TRIED TO CASH. HE HAS BEEN SENTENCED TO LIFE IN PRISON FOR SUCCESSFULLY TAKING #8-#10.

PETITIONER'S CRIME IS ONLY A SERIOUS THREAT TO SOCIETY IN THE ABSTRACT. IN REALITY, HE HAS NEVER CONFRONTED ANYONE, ENGAGED IN VIOLENCE, OR DONE MORE THAN MINOR HARM TO ANYONE BUT HIM-SELF. THE TOTAL SUM OF HIS THEFTS IS LIKELY LESS THAN $1000. IN EVALUATING THE SEVERITY OF PETITIONER'S OFFENSE THE COURT SHOULD CONSIDER THAT THE OFFENSE WAS A NONVIOLENT CRIME PRESENTING A LOW DEGREE OF DANGER TO SOCIETY. ALL OF PETITIONER'S OFFENSES ARE EQUALLY MINOR. EVEN THE TRIAL COURT DID NOT WANT TO SENTENCE PETITIONER TO 30 YEARS TO LIFE. IT WANTED TO SENTENCE PETITIONER TO 25 YEARS TO LIFE BUT WAS STATUTORILY BARRED FROM DOING SO. (RT 355-356.)

3. THE PENALTY IS DISPROPORTIONATE WHEN COMPARED TO PUNISHMENT PRESCRIBED IN CALIFORNIA FOR OTHER, MORE SERIOUS OFFENSES.

THAT [A THREE STRIKES SENTENCE] IS HARSH IS BEYOND ANY DISPUTE. INDEED, IT APPEARS THERE ARE ONLY TWO MORE SEVERE SENTENCES AVAILABLE TO ANYONE CONVICTED OF A CRIME IN CALIFORNIA: LIFE WITHOUT THE POSSIBILITY OF PAROLE AND DEATH. BECAUSE THE 25 YEAR MINIMUM OF HIS INDETERMINATE LIFE SENTENCE MAY NOT BE REDUCED BY CREDIT FOR GOOD BEHAVIOR OR WORKING WHILE IN PRISON, SEE IN RE CERVERA, 24 Cal. 4TH 1073, 103 Cal. Rptr. 2d 762, 16 P. 3d 176, 181-82 (Cal. 2001), RAMIREZ'S "REAL TIME TERM" OF 25 YEARS IN PRISON IS MORE THAN TWICE THE LENGTH OF THE REAL TIME TERM AT ISSUE IN RUMMEL, WHERE PAROLE WAS AVAILABLE AFTER 12 YEARS.

(RAMIREZ V. CASTRO (9TH CIR. 2004) 365 F 3d 755, 767.)

AS NOTED ABOVE, THE THIRD DISTRICT COURT OF APPEAL HAS ALSO RECOGNIZED THAT A THREE STRIKES SENTENCE IS "INDISPUTABLY SEVERE." UNDER THE THREE STRIKES LAW PETITIONER WILL NOT BE ELIGIBLE FOR PAROLE UNTILL HE HAS SERVED AT LEAST 25 YEARS IN STATE PRISON. BY CONTRAST, SOMEONE WHO COMMITS A COLD-BLOODED, PREMEDITATED MURDER WITH A DEADLY WEAPON WOULD RECIEVE A SENTENCE OF NO MORE THAN 26 YEARS TO LIFE AND WOULD BE ELIGIBLE FOR PAROLE EARLIER THAN PETITIONER. UNDER NO PRINCIPLED ANALYSIS CAN SNEAKING INTO

A HOUSE AND TAKING $8-$10 AND SOME CHECKS BE VIEWED AS POSING A GREATER DANGER TO SOCIETY THAN SUCH A COLD BLOODED **KILLER**, EVEN ACCOUNTING FOR PETITIONER'S PRIOR RECORD. AS IN THIS CASE, PROPORTIONALITY BREAKS DOWN BECAUSE TWO DEFENDANTS WITH IDENTICLE PRIORS RECIEVE THE SAME LIFE TERM EVEN IF ONE DEFENDANT'S CURRENT FELONY IS RAPE, ROBBERY, ARSON, AND THE OTHER DEFENDANT'S CURRENT FELONY IS A FAILURE TO REGISTER.

A FELON WHO BREAKS INTO A HOUSE, TIES UP THE RESIDENTS AND TAKES AN ENORMOUS AMOUNT OF VALUABLE PROPERTY IS TREATED THE SAME AS A PERSON LIKE PETITIONER WHO SNEAKS INTO A HOUSE, AVOIDS CONFRONTATION, STEALS $8-$10 AND UNSUCCESSFULLY TRIES TO CASH A CHECK. PETITIONER WAS SENTENCED TO A GREATER INDETERMINATE TERM (25 YEARS TO LIFE) THAN A PERSON CONVICTED OF SECOND DEGREE MURDER (15 YEARS TO LIFE) (190, Subd. (a).)

CONSEQUENTLY, AN ENTIRELY MINOR CURRENT OFFENDER SUCH AS PETITIONER IS SUBJECTED TO THE SAME PUNISHMENT AS A PERSON WHO RAPES AS HIS THIRDSTRIKE. COMPARED TO HOW THE LEGISLATURE TREATED OTHER REPEAT OFFENDERS, THE SEVERITY OF PETITIONER'S PUNISHMENT FAR OUTWEIGHS THE GRAVITY OF HIS OFFENSE.

4. THE PENALTY IS DISPROPORTIONATE WHEN COMPARED TO RECIDIVIST PUNISHMENTS IN OTHER JURISDICTIONS.

PETITIONER ACKNOWLEDGES THAT BURGLARY IS A SERIOUS OFFENSE IN THE ABSTRACT BUT WAS MINOR AS CARRIED OUT HERE. A COMPARISON OF THE CALIFORNIA THREE STRIKES LAW WITH THE RECIDIVIST STATUTES IN OTHER STATES SHOWS THAT, WHILE THE CALIFORNIA LAW IS APPLICABLE UPON THE COMMISSION OF ANY TYPE OF CURRENT FELONY, INCLUDING EXTREMELY MINOR FELONIES, MOST OTHER STATES REQUIRE THAT THE CURRENT FELONY BE OF THE AGGRAVATED TYPE.

BEFORE THIS COURT IS A NON VIOLENT DEFENDANT WITH SERIOUS DRUG PROBLEMS AND SERIOUS MENTAL PROBLEMS. HE HAS REPEATEDLY ENGAGED IN STEALING PETTY AMOUNTS FROM HOUSES. HE HAS NEVER CONFRONTED ANYONE OR ENGAGED IN ANY KIND OF VIOLENCE. IT IS A WASTE OF SOCIETY'S RESOURCES, AND PETITIONER'S OWN HUMAN POTENTIAL, TO LOCK PETITIONER UP FOR A MINIMUM OF 30 YEARS. IN SUM, PETITIONER'S SENTENCE EXCEEDS THE LIMITS ON CRUEL AND UNUSUAL PUNISHMENT IMPOSED BY BOTH THE UNITED STATES AND CALIFORNIA CONSTITUTIONS, AND THE JUDGMENT OUGHT THEREFORE TO BE REVERSED AND THE CASE REMANDED FOR RE-SENTENCING TO A TERM WHICH IS NOT CONSTITUTIONALLY INVALID.

# EXHIBIT LIST

| Exhibit | Description |
|---------|-------------|
| A | Petitioner (F. N. McKenzie) Declaration |
| B | Police Report, Page 2 of 4, #04062-02655 |
| C | 402 E.C. Request pg. 3 as CT62; RT11 & 12 |
| D | Police Report pg 2 of 4 and pg. 3 of 7 #04-062-02655 RT 295 & RT 296 |
| E | Appellant's 1st & 2nd Request for Extension of Time #H028695 |
| F | RT 32, RT 222, RT223 & RT224 |
| G | RT 34 |
| H | RT 29, RT 85, RT229 |
| I | CT 174 |
| J | CT 177, CT 178 & CT 179 |
| K | Opinion, 6TH App. Dist. pg. 4 w/cover & sig. pg. |
| L | F.B.I. Rap Sheet / CT 160 |
| M | Superior Court denial of habeas corpus |
| N | Reconsideration Denial |
| O | Appeal Court Denial |

# EXHIBIT A

COUNTY OF KINGS}

I RE McKENZIE}

# DECLARATION OF ISRAEL McKENZIE

I, ISRAEL McKENZIE, DECLARE AND STATE THAT I AM OF SOUND MIND AND GIVE VOLUNTARILY THE FOLLOWING:

## A. POST-CONVICTION DILIGENCE:

1.) I WROTE TO MY TRIAL COUNSEL, IRMA GALLARDO, ON TWO OCCASIONS IN PAST FIVE MONTHS AND GOT NO RESPONSE. MY LETTERS WERE ASKING QUESTIONS WHY SHE FAILED TO INVESTIGATE AND WHY SHE WITHDREW MY VIABLE DEFENSE OF FINDING PURSE, WHICH NEGATED THE BURGLARY, AND ACTS AND OMISSIONS.

2.) CORCORAN I, 3B YARD, HAS HAD CONTINUOUS LOCKDOWNS, MODIFIED-PROGRAMS, AND OTHER PROGRAM STOPAGES(FOR NO KNOWN REASONS), WHICH PREVENTS ACCESS TO THE LAW LIBRARY. PETITIONER IS A LAYMAN AT LAW AND IS ONLY ABLE TO MAKE THIS PETITION POSSIBLE DUE TO MEETING A PARALEGAL ON 1/23/07 THAT IS WILLING TO ASSIST PETITIONER.

3.) PETITIONER HAS EXPECTED TO GET A DECLARATION FROM HIROMI HIGASHI, AND AFTER MONTHS AWAITING DECLARATION, MS. HIGASHI ADVISED PETITIONER THAT SHE LOST THE DECLARATION. AS PETITIONER UNDERSTANDS FROM MS. HIGASHI, HER TESTIMONY WOULD BE THAT ON THE DAY OF CRIME(S) PETITIONER WAS WALKING IN THE NEIGHBORHOOD WITH CHECKS IN HIS HAND WHILE DRUNK, AND SHE TOLD PETITIONER TO GET IN THE CAR. PETITIONER

EXPLAINED HE FOUND A PURSE, AFTER DISCUSSING
THE OPTIONS MS. HIGASHI AND PETITIONER TOOK
THE PURSE AND PUT IT IN A MAIL-DROP-BOX IN
HOPES IT WOULD FIND ITS WAY BACK TO OWNER.
MS. HIGASHI INSISTS THAT SHE WILL TALK OR
TESTIFY VERSUS A DECLARATION, AND TO GIVE
HER ADDRESS AND PHONE NUMBER TO THE COURT.
HIROMI, JANE, HIGASHI, WHOM IS 48 AND ADD-
RESS IS 963 BERKSHIRE AVE; SUNNYVALE, CA.
94087 AND PHONE NUMBER IS (408) 739-8064.

B. TRIAL COUNSEL INEFFECTIVENESS:
1.) ON MULTIPLE OCCASSIONS, BOTH PRE-TRIAL,
AND DURING TRIAL, PETITIONER TOLD HIS TRIAL
COUNSEL THAT HE FOUND THE PURSE AND DID NOT
BREAK INTO ANY HOME.
2.) PETITIONER TOLD TRIAL COUNSEL OF MS.
HIGASHI ON MULTIPLE OCCASSIONS, WHO KNEW
THAT PETITIONER FOUND THE PURSE AND PUT
IT IN A MAIL-DROP-BOX AND SHE WOULD SO
TESTIFY.
3.) TRIAL COUNSEL PROMISED TO INVESTIGATE
EVERY FACT, WITNESS AND SUCH, BUT FAILED TO.
4.) PETITIONER TOLD TRIAL COUNSEL ON MULTIPLE
OCCASSIONS THAT HE ADMITTED TO POLICE THAT HE
FOUND THE PURSE. PETITIONER DID NOT UNDER-
STAND THAT COUNSEL WAS EXCLUDING PETITIONERS

STATEMENT AS THE PROSECUTOR DID.

5.) PETITIONER TOLD TRIAL COUNSEL ON MULTI-PLE OCCASSIONS THAT THERE WERE GARDENERS WHO SHOULD BE INTERVIEWED AS THEY SHOULD HAVE SEEN ANYONE WHO ALLEGEDLY BURGLARIZED THE VICTIM'S HOUSE.

6.) I ADVISED TRIAL COUNSEL THAT MY 2002 CASE WAS ONE PRIOR AS PROMISED BY MY LAWYER AND D.A, AND NOT SIX.

7.) AFTER REALIZING THAT MY TRIAL COUNSEL WASEN'T PUTTING ON EVIDENCE OF MY INNOCENCE OF THE BURGLARY AND RECIEVING STOLEN PROPERTY CHARGE, AND BEGGING HER TO ALLOW ME TO TESTIFY, SHE REFUSED ALL OF MY REQUESTS.

8.) PETITIONER AND TRIAL COUNSEL DISCUSSED PETITIONER HONESTLY TRYING TO RETURN THE PURSE TO THE RIGHTFULL OWNER AS A DEFENSE, AND TRIAL COUNSEL SAID SHE WILL THINK ON IT.

9.) EVERYTHING I ADVISED TRIAL COUNSEL ABOUT SHE TOLD ME SHE WILL LOOK INTO IT. I SUBSQUENTLY LEARNED INVESTIGATION WAS DONE. WHETHER OR NOT ANY FOOTPRINTS WERE FOUND, WHEN THE GROUND WAS WET FROM RAINS DAY BEFORE.

10.) PART OF DEFENSE PETITIONER TOLD TRIAL COUNSEL WAS THE INCONSISTENT TESTIMONY OF THE VICTIM REGUARDING WHERE SHE LEFT PURSE, WHAT TIME HER APPOINTMENT WAS, ECT. AND COUNSEL NEVER PUT FORTH

ANY OF PROBLEMS.

12.) PETITIONER TOLD COUNSEL THERE WAS NO EVI-DENCE TO ESTABLISH BURGLARY, AND WHY IS IT STILL BEING CHARGED. COUNSEL KEPT SAYING THERE WAS A TIME AND A PLACE, AND NEVER REALLY ANS-WERED THAT QUESTION.

13.) PETITIONER DIDN'T UNDERSTAND WHY TRIAL COUNSEL CONCEEDED COUNT TWO AND TRIED TO QUESTION TRIAL COUNSEL WHO TOLD PETITIONER SHE WOULD TALK TO HIM, AND NEVER DID, WHEN PETITIONER TOLD HER REPEATEDLY THAT HE FOUND FOUND THE PURSE.

C. ADVISING APPEALLATE COUNSEL:
PETITIONER COMMUNICATED ALL FACTS OF INEFFECTIVE ASSISTANCE OF TRIAL COUNSEL (SEE B, Supra.) TO APPEALLATE COUNSEL.

I DECLARE UNDER PENALTY OF PERJURY THAT THE FORGOING IS TRUE AND CORRECT.

EXECUTED THIS 13TH DAY OF FEBUARY 2007, IN KINGS COUNTY CALIFORNIA.

/s/ orig.
ISRAEL N. MCKENZIE

# EXHIBIT B

| REPORT TYPE | ☑ SUPPLEMENTAL | Office of the Sheriff Santa Clara County NARRATIVE FORM | ☑ SE | 04-062-0265S |
|---|---|---|---|---|
| 459 P.C. Residential Burglary | | | | |

| LOCATION OF ORIGINAL EVENT (IF KNOWN) ., Saratoga, CA 95070 | VICTIM NAME (LAST, FIRST, MIDDLE (FIRM, IF BUSINESS)) Johnston    Evelyn |
|---|---|

1 INVESTIGATION:

2

3 On 3/3/04, at approximately 0900, I was dispatched to assist Deputy

4 Muncy who was attempting to contact a burglary suspect. When Muncy

5 talked with the suspect, he claimed he found victim Johnston's purse.

6 After finding the purse, he attempted to cash a check he took from

7 the purse and then dumped the purse in a postal drop box in downtown

8 Saratoga.

9

10 I called the Saratoga post office and had a postal a employee respond

11 to my location and open the postal drop box. I was unable to find

12 the purse in the Postal drop box. I had the postal employee check

13 with her supervisor and to see if the purse had been found by another

14 employee.

15

16 INVESTIGATION CONTINUED:

17

18 On 3/4/04, at approximately 0800 hours I received a call from postal

19 employee Carol Black who said she had found a purse in the village

20 postal box. I responded to the Saratoga Main Post Office and

21 retrieved the stolen purse. I found the purse to be undamaged.

22 Victim Johnston's identification and ATM card were loose in the purse

23 along with the a Wells Fargo check book. There was no cash or change

24 in the purse.

25

26 INVESTIGATION CONTINUED:

27

28 I returned the purse to victim Johnston. Johnston looked through the

29 purse and noticed that her drivers licenses and ATM card were in

30 where she had left them. Johnston also noticed her Bank of America

| OFFICER'S NAME Novick | ID NUMBER 1713 | DATE 03/04/04 | SHIFT/DAYS OFF 908 II    FSS | SUPERVISORS REVIEW | ID NUMBER | DATE | PAGE 2 | OF 4 |
|---|---|---|---|---|---|---|---|---|

# EXHIBIT C

V.    DEFENSE REQUESTS A HEARING PURSUANT TO EVIDENCE CODE §402 FOR
      ANY STATEMENTS WHICH THE PROSECUTION INTENDS TO ADMIT WHICH
      ARE ATTRIBUTABLE TO THE DEFENDANT

      Evidence Code section 402 states:

            (a)  When the existence of a preliminary fact is disputed, its

      existence or non-existence shall be determined as provided in this article.

            (b) The court may hear and determine the question of the admissibility out of the

      presence of the jury; but in a criminal action, the court shall hear and determine the

      question of the admissibility of a confession or admission of the defendant out of the

      presence of the jury if any party so requests.

      The defense requests such a hearing with respect to any statement that the prosecutor intends to

offer which is attributable to the defendant. The defense is challenging the admissibility of any such

statements on the ground that statements were taken in violation of Miranda v. Arizona (1963) 234 U.S.

456. [1]

VI.    MOTION TO EXCLUDE REFERENCE TO ANY PRIOR CONVICTION WHICH
       THE DEFENDANT HAS SUFFERED

      If the defendant should testify, his prior convictions should be excluded under Evidence Code

section 352, and the Beagle/Castro/Collins line of cases. The relevant inquiry for the court requires

analysis of the following questions: (1) Does the prior conviction evidence a lack of truthfulness or

dishonesty?  (2) Is it remote in time?  (3) Is it so similar that the jury will judge the defendant on the

basis of that crime and not the one currently before it?  (4) Would it prevent the defendant from

testifying and thus inhibit the court's search for the truth?

      It is anticipated that the prosecution will attempt to impeach Mr. McKenzie with the following

prior convictions: six counts of 459/460(a), felonies (6/20/2002); 484/488, a misdemeanor

(2/19/2002); 484, a misdemeanor (1/31/2002).

3

11

1   discovery issue, just -- the People would just request any
2   reciprocal discovery if it has not been turned over thus far
3   in the case.

4           THE COURT:  All right.

5           All right.  Roman numeral No. 4, is there going to
6   be mention of his parole status?

7           MR. DUFFY:  I'm not planning to mention
8   Mr. McKenzie's parole status in my case-in-chief.

9           THE COURT:  Okay.  And then if you intend to use
10  it in rebuttal, let us know before you do it so we can have
11  a hearing on it.

12          MR. DUFFY:  Yes.

13          ✕ THE COURT:  Roman numeral No. 5, you're not
14  intending to use any of the defendant's statements?

15          .MR. DUFFY:  I'm not intending to use any
16  statements that the defendant made to the police.

17          THE COURT:  Right.

18  Prosecutor MR. DUFFY:  However, there was a statement --
19  statements made to witness Ochinero regarding his
20  conversation with the defendant outside the Bank of
21  America.  That certainly will be coming in.

22          THE COURT:  Okay. ) So the People are not going to
23  be -- use the -- any statement to the police.

24          MR. DUFFY:  Your Honor, since we're on that
25  particular subject now, I would make the further request
26  that if any police officer witnesses are called and are
27  cross-examined by the defense, that Counsel be prohibited
28  from asking any questions that would elicit a response from

12

1   the police officers regarding anything her client may have

2   said to the police, as it is hearsay and it is not

3   admissible.

4           THE COURT:   That's true.   I don't think Counsel

5   will do that.

6   ✳Defense→ MS. GALLARDO:   Yes, your Honor.

7           MR. DUFFY:   Also, might I add, again,

8   on statements --

9           THE COURT:   Whose motions are these?   Are we on

10  defense motions?

11          I'm just giving you a bad time.

12          MR. DUFFY:   I think, partially, to save time, your

13  Honor, and I'm still addressing the same issue.

14  ɾroseщtoʳ_One of the concerns, also, that I have in regard

15  to statements which are hearsay is that in -- unless the

16  defendant is going to testify and that representation is

17  made, that the defense be precluded from making any

18  statement in their opening statement about what the

19  defendant told the police.

20          THE COURT:   Well, it's all inadmissible.   So at

21  this time it's all inadmissible unless the People attempt to

22  get it in.   They say they're not going to get it in, so

23  we're not going to have a 402 hearing.   So it's not coming

24  in.

25          ·MS. GALLARDO:   That's clear, your Honor.

26          MR. DUFFY:   Thank you.

27          THE COURT:   Okay.   Roman numeral No. 6, felony

28  priors for impeachment.   This was the -- he has two

# EXHIBIT D

| REPORT TYPE<br>459 P.C. Residential Burglary | ☑ SUPPLEMENTAL | Office of the Sheriff<br>Santa Clara County<br>NARRATIVE FORM | 04-062-0265S |
|---|---|---|---|

| LOCATION OF ORIGINAL EVENT (IF KNOWN) ., Saratoga, CA 95070 | VICTIM NAME (LAST, FIRST, MIDDLE (FIRM, IF BUSINESS)) <br> Johnston          Evelyn |
|---|---|

1 INVESTIGATION:

2

3 On 3/3/04, at approximately 0900, I was dispatched to assist Deputy

4 Muncy who was attempting to contact a burglary suspect. When Muncy

5 talked with the suspect, he claimed he found victim Johnston's purse.

6  After finding the purse, he attempted to cash a check he took from

7 the purse and then dumped the purse in a postal drop box in downtown

8 Saratoga.

9

10 I called the Saratoga post office and had a postal a employee respond

11 to my location and open the postal drop box. I was unable to find

12 the purse in the Postal drop box. I had the postal employee check

13 with her supervisor and to see if the purse had been found by another

14 employee.

15

16 INVESTIGATION CONTINUED:

17

18 On 3/4/04, at approximately 0800 hours I received a call from postal

19 employee Carol Black who said she had found a purse in the village

20 postal box.  I responded to the Saratoga Main Post Office and

21 retrieved the stolen purse.  I found the purse to be undamaged.

22 Victim Johnston's identification and ATM card were loose in the purse

23 along with the a Wells Fargo check book.  There was no cash or change

24 in the purse.

25

26 INVESTIGATION CONTINUED:

27

28 I returned the purse to victim Johnston.  Johnston looked through the

29 purse and noticed that her drivers licenses and ATM card were in

30 where she had left them.  Johnston also noticed her Bank of America

| OFFICER'S NAME<br>Novick | ID NUMBER<br>1713 | DATE<br>03/04/04 908 | SHIFT/DAYS OFF<br>II      FSS | SUPERVISORS REVIEW | ID NUMBER | DATE | PAGE<br>2 | OF<br>4 |
|---|---|---|---|---|---|---|---|---|

488-PC- Petty Theft
496-PC-Possession of Stolen Property
LOCATION OF ORIGINAL EVENT (IF KNOWN)

REPORTED CONFIDENTIAL
Santa Clara County
NARRATIVE

CASE NO.
04-062-0265S

VICTIM NAME (LAST, FIRST, MIDDLE (FIRM, IF BUSINESS))
Johnston        Evelyn

```
 1  NOTIFICATION:

 2

 3  I was dispatched to make contact with a theft victim at her residence

 4  in Saratoga. When I arrived I made contact with V-Johnston who gave

 5  me the following information.

 6

 7  STATEMENT OF VICTIM JOHNSTON:

 8

 9  Johnston said she last saw her purse at 1230 hours when she wrote a

10  check to her gardener. Johnston said she went into the kitchen and

11  was making soup until approximately 1400 hours. Johnston said she

12  came out of the kitchen and noticed her purse was missing.

13

14  Johnston said her gardner Ramon has been working for her for 20 years.

15  Johnston said she trusts Ramon with her life. Johnston said Ramon did

16  have a helper but she does not believe he would have come in and

17  taken her purse. Johnston said Ramon is a very honest person and has

18  never had a problem with him or any of his employees.

19

20  Johnston said she left her front door open because it was such a nice

21  day. Johnston said she had a screen door that was closed. Johnston

22  said she usually puts her purse in her room out of sight but today

23  she left it on the dining room table. Johnston knows she left her

24  purse on the table after she wrote the check to her gardner.

25

26  Johnston said there was an individual that lived across the street

27  from her that I should check out. Johnston said there was a white

28  male adult in his thirties that was living across the street from

29  her. Johnston added that she sees him every now and then walking in

30  the street and he usually has a hat on backwards. Johnston said that
```

| OFFICER'S NAME | ID NUMBER | DATE | SHIFT/DAYS OFF | SUPERVISORS REVIEW | ID NUMBER | DATE | PAGE | OF |
|---|---|---|---|---|---|---|---|---|
| K Muncy | 1757 | 03/03/04 1352 | II    SSM | Ray, Donald L. | 1495 | 03/04/04 1110 | 3 | 7 |

1   TRYING TO GET THIS ONE CHECK CASHED.  MR. OCHINERO SAYS NO.

2           BUT IF YOU ARE TO BELIEVE THAT MR. MCKENZIE HAD

3   MS. JOHNSTON'S PURSE YOU KNOW THERE WAS ANOTHER CHECKBOOK IN

4   THERE, IT WAS A WELLS FARGO BANK, AND YOU ALSO HEARD THAT

5   THE WELLS FARGO BANK WAS RIGHT NEXT DOOR TO THE BANK OF

6   AMERICA, IF HE WAS SO DESPERATE TO GET MONEY WHY NOT JUST GO

7   NEXT DOOR AND TRY THERE?

8           NOW, AS I TOLD YOU EARLIER THIS IS A VERY SHORT

9   CASE AND THAT'S BECAUSE THERE IS VERY LITTLE EVIDENCE.

10          IN SOME BURGLARY CASES THERE ARE WITNESSES WHO

11  WOULD COME FORWARD AND THEY SAW SOMEBODY ENTER THE HOUSE OR

12  BE NEAR THE HOUSE.  YOU DON'T HAVE THAT HERE.

13          THE GARDNER AND HIS HELPER WERE NEAR THE HOUSE BUT

14  THEY WERE NEVER QUESTIONED AS TO WHETHER THEY SAW ANYBODY

15  ENTER THE HOUSE.  AND IN FACT I BELIEVE DEPUTY MUNCY TOLD

16  YOU THAT EVELYN JOHNSTON DIDN'T EVEN KNOW THE NAME OF THE

17  HELPER SO HE DOESN'T ASK DEPUTY MUNCY, COULDN'T ASK WHETHER

18  OR NOT THEY SAW ANYBODY ELSE AROUND THE HOUSE.

19          I ALSO HAVE NO FINGERPRINTS.  YOU HEARD ME ASK,

20  DID YOU DUST THE DOOR HANDLE OF THE SCREEN DOOR FOR

21  FINGERPRINTS?  NONE WERE LIFTED.  NONE WERE LIFTED FROM

22  EITHER THE DOOR OR ANYWHERE ELSE IN THE HOUSE.  SO YOU DON'T

23  HAVE THAT IN THIS CASE.

24          IN SOME BURGLARY CASES THERE ARE FOOTPRINTS AND

25  THAT'S WHY I KEPT ASKING ABOUT THAT.  USUALLY WHAT HAPPENS

26  IS THEY WILL TAKE A FOOTPRINT AND THEY WOULD GIVE YOU AN

27  APPROXIMATE SIZE OF IT.

28          MR. DUFFY:  YOUR HONOR, I'M GOING TO OBJECT AS

1    COUNSEL IS ARGUING EVIDENCE THAT'S NOT IN THE RECORD.

2         THE COURT:  SUSTAINED.

3         MS. JURADO:  MY ARGUMENT IS THAT THERE IS NO SUCH

4    EVIDENCE HERE.

5         THE COURT:  SUSTAINED.  SPECULATION.

6         MS. JURADO:  NOW, IN THIS CASE I ASKED

7    MS. JOHNSTON IF IT HAD BEEN RAINING AND SHE SAID IT WAS THE

8    DAY BEFORE.  AND THEN SHE ALSO TOLD YOU THAT HER CARPET WAS

9    LIGHT BLUE, BUT THERE WAS NO EVIDENCE OF ANY FOOTPRINTS IN

10   THE HOUSE, SO YOU DON'T HAVE THAT HERE.

11        NOW, ANOTHER PIECE OF EVIDENCE JURORS USUALLY HAVE

12   IN A BURGLARY CASE, AND ALSO IN RECEIVING CONCEALING OR

13   WITHHOLDING STOLEN PROPERTY, IS THAT THE OFFICERS USUALLY

14   FIND EITHER ON THE PERSON OR HIS OR HER PROPERTY, SOME OF

15   THAT.

16        MR. DUFFY:  YOUR HONOR, AGAIN I'M GOING TO OBJECT.

17   COUNSEL IS ARGUING ABOUT FACTS NOT IN THIS RECORD.

18        THE COURT:  SUSTAINED.  SPECULATION.

19        MS. JURADO:  NOW, IN THIS CASE, I ASKED DEPUTY

20   MUNCY WHETHER OR NOT HE HAD FOUND ANY OF MS. JOHNSTON'S

21   PROPERTY IN MR. MCKENZIE'S RESIDENCE AND HE SAID NO.  AND

22   THEN ALSO YOU HEARD THAT DEPUTY TORRES SEARCHED

23   MR. MCKENZIE'S, I'M SORRY, DEPUTY TORRES IS THE ONE WHO

24   SEARCHED MR. MCKENZIE'S RESIDENCE AND HE FOUND NO PROPERTY

25   THERE.  HE DIDN'T FIND ANY CHECKS.  HE DIDN'T FIND ANY ITEM

26   BELONGING TO EVELYN JOHNSTON ON THE RESIDENCE.  AND DEPUTY

27   MUNCY SEARCHED MR. MCKENZIE'S PERSON AND HE ALSO DID NOT

28   FIND ANYTHING ON HIM.

# EXHIBIT E



Eric Weaver
Attorney at Law
State Bar No. 115208
P.O. Box 6294
Albany, CA 94706
Telephone: (510) 524-2355

Attorney for Appellant
ROBERT HAROLD SHEPHARD

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA, | No. H028695 |
| Plaintiff and Respondent, | |
| | Santa Clara County |
| v. | Superior Court |
| | No. CC448878 |
| ISRAEL McKENZIE, | |
| Defendant and Appellant. | |

**APPELLANT'S FIRST REQUEST FOR EXTENSION OF TIME**

1.    I, the undersigned, am court-appointed counsel for Israel McKenzie, and hereby move for an extension of time of 30 days in which to file the Appellant's Opening Brief in the above styled case to and including September 7, 2005. Appellant's Opening Brief is now due on or about August 8, 2005.

2.    I was appointed to represent appellant by order of this Court on or about May 12, 2005.

1

3. I received the record on appeal on or about June 28, 2005. The record is approximately is 623 pages in length.

4. No previous extension of time has been requested in this case.

5. Notice pursuant to California Rules of Court, rule 17, subd. (a) has not been issued.

6. Appellant was convicted of one count of burglary (Pen. Code §§ 459/460) and one count of receiving stolen property (Pen. Code § 496, subd. (a)). He was sentenced to a total term of five years plus 25 year to life. (CT 43, 258-259.)

7. Defendant is not on bail pending appeal.

I have read the Clerk's Transcript and determined that the record is complete.

In addition to the work that I have performed on this case, in the past 30 days I have filed Petitioner's Objections to Findings and Recommendations of Magistrate in *Smith v. LaMarque*. (E.D. CA Case No.Civ. S-02-1583-DFL CMK); Petitioner's Objections to Findings and Recommendations of Magistrate in *Forstein v. Henry* (E.D. CA Case No.CIV. S-03-0544-FCD-GGH-P; appellant's petition for review in *People v. Alvarez* (First District Court of Appeal No. A103543); appellant's opening brief in *In re Marcel S.* (First District Court of Appeal No. A110083); assisted in the drafting of respondent's petition for rehearing in *Shugart v. OEA* (First District Court of Appeal No. A099649); appellant's opening brief in *People v Fitzgerald* (First District Court of Appeal No. A108458); and appellant's reply brief in *People v. Hughs* (First District Court of Appeal No. A108848).

In the week of July 25-29, 2005, I was out of the office on a family vacation.

For the foregoing reasons I respectfully request an extension of time in which to file appellant's opening brief of 30 days to and including September 8, 2005.

2

I declare under penalty of perjury that the foregoing is true and correct and was executed August 6, 2005, at Albany, California.

_____/s/_____

Eric Weaver
Attorney for Appellant
Israel McKenzie

Extension of time of ___ days is granted.

Dated: _____

By: _____

3



Eric Weaver
Attorney at Law
State Bar No. 115208
P.O. Box 6294
Albany, CA 94706
Telephone: (510) 524-2355

Attorney for Appellant
ROBERT HAROLD SHEPHARD

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>ISRAEL McKENZIE,<br><br>Defendant and Appellant. | No. H028695<br><br>Santa Clara County<br>Superior Court<br>No. CC448878 |

### APPELLANT'S SECOND REQUEST FOR EXTENSION OF TIME

1.    I, the undersigned, am court-appointed counsel for Israel McKenzie, and hereby move for an extension of time of 30 days in which to file the Appellant's Opening Brief in the above styled case to and including October , 2005. Appellant's Opening Brief is now due on or about September 7, 2005.

2.    I was appointed to represent appellant by order of this Court on or about May 12, 2005.

1

3.      I received the record on appeal on or about June 28, 2005.  The record is approximately is 623 pages in length.

4.      One previous extension of time has been requested in this case.

5.      Notice pursuant to California Rules of Court, rule 17, subd. (a) has not been issued.

6.      Appellant was convicted of one count of burglary (Pen. Code §§ 459/460) and one count of receiving stolen property (Pen. Code § 496, subd. (a)).  He was sentenced to a total term of five years plus 25 year to life.  (CT 43, 258-259.)

7.      Defendant is not on bail pending appeal.

In the past 30 days I have performed the following time sensitive tasks. I filed appellant's reply brief in *People v. Atherton* (Third District Court of Appeal No. C047912); appellant's petition for review in *People v. Knauff* (Third District Court of Appeal NO. C048312); appellant's opening brief in *People v. Magallon* (First District Court of Appeal No. A108884) and appellant's opening brief in *People v. Monroe* (Fifth District Court of Appeal No. F047261).  I also drafted and sent to the printer plaintiff's opposition to Motion for Judgment on the Pleadings in *Dennis-Johnson v. Kaiser, et al.* (Sac. County Superior Court No. 03AS03739);

For the foregoing reasons I respectfully request an extension of time in which to file appellant's opening brief of 30 days to and including October 7, 2005.  I declare under penalty of perjury that the foregoing is true and correct and was executed September 2, 2005, at Albany, California.

_____/s/_____

Eric Weaver
Attorney for Appellant
Israel McKenzie

Extension of time of ___ days is granted.

Dated: _____

By: _____

2

# EXHIBIT F

```
                                                                  32
 1   SAN JOSE, CALIFORNIA                        December 10, 2004
 2
 3                         PROCEEDINGS
 4          (At 9:40 a.m., court reconvened and the following
 5   proceedings were had:)
 6          THE COURT: All right.  We'll be on the record in
 7   People versus McKenzie.  The record will show that all
 8   jurors, counsel, and defendant are present.
 9          You may proceed.
10          (An opening statement by Mr. Duffy was reported,
11   but not transcribed herein.)
12          THE COURT: All right.  Thank you, Mr. Duffy.
13          Ms. Gallardo, did you wish to make an opening
14   statement at this time or reserve it?
15          MS. GALLARDO:  Reserve, your Honor.  Thank you.
16          THE COURT: All right.  Thank you.
17          Then you may call your first witness.
18          MR. DUFFY:  Thank you.  We'd call Evelyn Johnston
19   to the stand.
20          THE COURT: All right.  Thank you.
21          (Mr. Duffy leaves and re-enters the courtroom.)
22          THE CLERK:  Ms. Johnston, if you'd just come stand
23   near the table, face me, and raise your right hand, please.
24          MR. DUFFY:  If you would just stand right here,
25   raise your right hand, and face Cathy, our clerk.
26                       EVELYN JOHNSTON,
27   called as a witness on behalf of the people, after having
28   been first duly sworn to tell the truth, testified as
```

1      Q.   Did you search his person?

2      A.   Did I search his person.

3      Q.   Yes.

4      A.   I did.

5      Q.   You found no checks on his person; correct?

6      A.   No, ma'am.

7      Q.   You didn't find any -- you already stated he

8  didn't have any cash on his person; correct?

9      A.   No, ma'am.

10     Q.   Did you find anything else that might have

11 belonged to Evelyn Johnston on Mr. McKenzie's person?

12     A    No, ma'am.

13         MS. GALLARDO:  Q.   Nothing further.

14         THE COURT:  Redirect?

15         MR. DUFFY:  Thank you.

16              REDIRECT EXAMINATION BY MR. DUFFY

17     Q.   Deputy, to your knowledge, are the tenants who

18 lived next to Mrs. Johnston still living at that -- those

19 addresses?

20     A.   I don't know.

21     Q.   Okay.  Do you have any information that they're

22 not living there?

23     A.   No.

24     Q.   Okay.  And so if you wanted to go back and

25 interview those people, you could go check it out

26 yourself; is that true?

27     A.   I could, sir.

28     Q.   Any defense attorney or investigator could do

1   the same thing?

2           MS. GALLARDO:  Objection.  Burden shifting.

3           THE COURT:  Overruled.

4           MR. DUFFY:  You can answer the question.

5           THE WITNESS:  Yes, sir.

6           BY MR. DUFFY:  Q.  They can; can't they?

7       A.  Yes, sir.

8           MR. DUFFY:  Nothing further.

9           THE COURT:  Recross?

10          MS. GALLARDO:  No  thank you.

11          THE COURT:  Thank you.  You may step down.  Is

12  this witness excused?

13          MR. DUFFY:  He is.

14          THE COURT:  Thank you.  You're excused.

15          THE WITNESS:  Thank you, Your Honor.

16          MR. DUFFY:  Your Honor, at this time the people

17  would move People's Number 1 and 2 into evidence.

18          MS. GALLARDO:  Any objection?

19          MS. GALLARDO:  None.

20          THE COURT:  Received as People's 1 and 2.

21          MR. DUFFY:  Thank you.  If I could have just one

22  moment.

23          Your Honor, with the exhibits in evidence, the

24  people have no further witnesses and would rest at this

25  time.

26          THE COURT:  People rest.

27          Do you wish to make an opening statement at this

28  time?

223

```
 1              MS. GALLARDO:  No, Your Honor, not at this time.
 2              THE COURT:  All right.  Any witnesses?
 3              MS. GALLARDO:  No, Your Honor.
 4              THE COURT:  All right.  Counsel approach the
 5   bench for a moment, please?
 6              (Whereupon a bench conference was held off the
 7   record.)
 8              THE COURT:  All right, ladies and gentlemen,
 9   that is the evidence in the case.  But as I indicated --
10   Thursday?  Whenever jury selection was -- we have to have
11   a jury instruction conference to make sure the
12   instructions are all there and appropriate for the case.
13   What we'll do is release you for lunch now, or brunch,
14   and have you come back at 1:30.  Between now and then,
15   we'll have the conference and get the instructions
16   prepared.  I'll instruct you at 1:30.  Then the attorneys
17   will argue the case to you.  And more than likely, you
18   can begin deliberation this afternoon.  Okay?
19              So with that, please remember the admonition not
20   to discuss this case among yourselves or with anyone else
21   or form or express any opinion until the case is
22   submitted to you.  We'll see you at 1:30 in the jury
23   assembly room.  Okay?  Thank you.
24              The record will show the jury has left.  We're
25   here for the jury instruction conference.
26              MR. DUFFY:  Judge, I have included a number of
27   instructions in anticipation of a number of things.  So
28   to alert you, I believe a number of the instructions that
```

# EXHIBIT G

34

```
 1          MR. DUFFY:  Thank you.  I have nothing further.
 2          THE COURT:  Anything further?
 3          MS. JURADO:  Just briefly.
 4                    RECROSS-EXAMINATION
 5  Q.  (BY MS. JURADO)  Mr. Ochinero, did you notice any other
 6  tattoos?
 7  A.  No, I did not.
 8  Q.  Just that one tattoo?
 9  A.  Yes.
10  Q.  You were able to see his hands?
11  A.  Yes, I was.  His left hand.
12          MS. JURADO:  Nothing further.
13          THE COURT:  All right.
14          MR. DUFFY:  Nothing further.
15          THE COURT:  You are excused.  Thank you.
16          MR. DUFFY:  Your Honor, at this time the People would
17  ask that People's No. 1 be moved into evidence.
18          THE COURT:  Any objection?
19          MS. JURADO:  None, Your Honor.
20          THE COURT:  In evidence.
21          (WHEREUPON, People's Exhibit No. 1, previously marked
22  for identification, was moved into evidence.)
23          MR. DUFFY:  The People have no further witnesses at
24  this time, Your Honor.  The People would rest.
25          THE COURT:  All right.  You wish to present affirmative
26  evidence?
27          MS. JURADO:  Not at this time, Your Honor.  Thank you.
28          THE COURT:  Argument.
```

# EXHIBIT H

29

1  Mr. McKenzie lasted?

2  A.  My transaction with Mr. McKenzie?  What do you mean?

3  Q.  The contact you had with Mr. McKenzie on March 2nd, '04, how

4  long did that last?

5  A.  I'd say approximately one minute.

6  Q.  One minute.  Then you immediately called the police; is that

7  correct?

8  A.  Yes, I did.

9  Q.  You spoke to them approximately how long, the police, the

10  sheriffs?

11  A.  Directly, three, four minutes.

12  Q.  Let me ask you this:  How do you know it was closer to 2:00

13  p.m. and not 3:00 p.m.?

14  A.  Because I had a 2:30 appointment.

15  Q.  Did you make that 2:30 appointment?

16  A.  Absolutely.

17  Q.  You were not late?

18  A.  Nope.

19  Q.  Now, you indicated that when you were walking to your car,

20  that's when you noticed somebody approaching you, correct?

21  A.  That's correct.

22  Q.  Are you walking towards your car or were you already at your

23  car opening your car door when you noticed somebody walking

24  towards you?

25  A.  As I stated previously, I was standing at my car.  I was

26  getting my papers together.  That would be my ATM slip and my

27  card.

28  Q.  What kind of work do you do, Mr. Ochinero?

1      Q.    What was the reason that you left your office?

2      A.    I had a client appointment.

3      Q.    And do you recall what time that appointment was?

4      A.    It was in the 3 o'clock hour.

5      Q.    And was that appointment in the city of Saratoga

6    or somewhere else?

7      A.    In the city of San Jose.

8      Q.    And how were you planning on getting to that

9    appointment?

10     A.    By motor vehicle.

11     Q.    Now, on your way to this appointment, did you make

12   any stops?

13     A.    I did.

14     Q.    And where did you make a stop or stops?

15     A.    At the Bank of America, in downtown Saratoga, on

16   Big Basin Way.

17     Q.    Again returning to our diagram, People's No. 1 --

18   I should say aerial photograph.  I'm dating myself.  Do you

19   see the Bank of America there pictured on People's No. 1?

20     A.    I know it's there somewhere.

21     Q.    Okay.  Well, are you familiar with the

22   supermarket?

23     A.    Yes.

24     Q.    I guess it's a Buy and Save.

25     A.    Yes.  Okay.  I do see it now.

26     Q.    Okay.  Do you recognize the --

27     A.    Yes.

28     Q.    -- Bank of America parking lot?

1   no.

2          2.09?

3          MR. DUFFY:  Well, Your Honor, I put that in here

4   in respect to the placing of the purse in the mailbox.

5          THE COURT:  No.  Not gonna fly.  2.09 I'll give.

6   2.11 I'll give.  2.13, there's been no evidence of

7   consistent or inconsistent statements; correct?

8          MS. GALLARDO:  Right.  There isn't.

9          MR. DUFFY:  There was only one thing that came

10  on cross examination of the officer.  The witness Evelyn

11  Johnston stated that she left her door ajar.  However, I

12  don't think there was any question to her, did you tell a

13  police officer that you left it ajar?  And the officer

14  testified that she never said that she left her door

15  ajar.  So I'm not sure this is really an inconsistent

16  statement.  I don't have a recollection of Ms. Johnston

17  saying I never told -- I told a police officer I left the

18  door open.

19         THE COURT:  I won't give it.

20         2.15 no.

21         MR. DUFFY:  Yes.  Actually, judge, 2.15 is an

22  appropriate instruction because this is the instruction

23  of recently -- recent possession of stolen property.

24         THE COURT:  Because of when the evidence -- when

25  the witness said the defendant tried to have him cash a

26  check?

27         MR. DUFFY:  Yes, in terms of when the crime

28  occurred.

229

# EXHIBIT I

1   indicating that the trial court had properly exercised its discretion by considering the valid
2   mitigating factors of the nature of the current offense and the remoteness of Mr. Bishop's prior
3   convictions.

4       Recently, in *People v. Cluff* (2001) 87 Cal.App.4th 991, the Court of Appeals vacated a
5   trial court's sentence of 25-to-life in a Penal Code Section 290 prosecution. The Court of
6   Appeals held that the trial court had abused its discretion when it denied Mr. Cluff's *Romero*
7   motion. Cluff was convicted of nine (9) counts of Penal Code Section 288 in the 1980s. Cluff
8   also had convictions for indecent exposure in his past. Despite the fact that Cluff made
9   conflicting representations about his whereabouts and that he left California to travel to Utah for
10  four (4) months without notifying the police or his parole agent, the 1st District stated its belief
11  that Cluff should be treated as though he falls outside the spirit of the three strikes law. The
12  opinion reads as follows:

13      The nature of Cluff's current offense did not demonstrate recidivist tendencies
        toward child molestation. While there is no requirement that a third strike be a
14      serious or violent felony, neither the Legislature nor the voters intended the Three
        Strikes law to be used as a nuisance statute to rid society forever of persons who
15      fail to meet technical requirements to confirm an accurate registration.    *(Id.* at
        1004.)
16

17      Following the dictates of *Romero, Williams, Bishop,* and *Cluff* this court should consider

18  the nature of the present offense, the defendant's background and character, and any other

19  individualized considerations with the end result being fair consideration of the interests of

20  defendant as well as the interests of society as represented by the People.

21  CURRENT OFFENSE:

22      Mr. McKenzie was found guilty after a jury trial on December 14, 2004, to one count of

23  Penal Code section 459/460(a), a felony, and one count of Penal Code section 496(a), a felony.

24  The court also found true that Mr. McKenzie had suffered six priors convictions for burglary and

25  that each of those burglary convictions constituted a strike under the law. The court also found

26  a prison prior and a 5 year prior to be true. Mr. McKenzie's current conviction stems from an

27  incident that occurred on March 2, 2004. In that incident, Mr. McKenzie stole a purse from the

28  dining room table of one of his neighbor's home. Mr. McKenzie then unsuccessfully solicited

    someone at a bank to cash a check for him. Mr. McKenzie was arrested on March 3, 2004

                                    4                                    174

# EXHIBIT J

1  forced to leave his elementary school at a time he was beginning to learn how to form the
2  connections and bonds with his peers. Unfortunately he fell into a group of older kids who
3  introduced him to alcohol and marijuana. In his formative years Israel was denied the basic
4  relationship-building skills needed for a healthy and successful life. By the time Israel was fifteen
5  he was addicted to alcohol and began experimenting with drugs. By sixteen he began
6  experimenting with various drugs including, cocaine, heroin, PCP, and LSD.

7      However in 1995 Israel was determined to change his life and acquired his GED.
8  Subsequently he attended Campbell Community College where he enrolled in several computer
9  programing courses.

10                          Mental Health and Substance Abuse

11      Israel states that he continued to use marijuana and alcohol on a daily basis from the age
12  of thirteen until he was fifteen years old when he became addicted to alcohol and also commenced
13  using a cocktail of different illicit drugs. Israel found that alcohol helped calm him down without
14  which he experienced bouts of overwhelming sadness and anxiety. Israel states that by fifteen
15  years of age he was heavily addicted to alcohol. Later in his younger years he began intravenous
16  use of heroin. He has since battled with alcohol and heroin addiction.

17      Israel supported his addiction by obtaining casual laboring jobs, where he would work for
18  approximately two weeks at a time but once he received his first check he would leave and
19  continue his "chase for the constant high." By the end of 2001, Israel's drug use brought him
20  within the purviews of the law. He was arrested in November 2001 after he was found in
21  possession of a hypodermic needle a small amount of heroin and was also under the influence of
22  heroin and alcohol. Israel was granted Deferred Entry of Judgment. Subsequent arrests for being
23  under the influence of heroin placed Israel on supervised probation. Israel did enter Horizon
24  South on three separate occasions in 2000 and 2001 but each time he would remain in the
25  program for three months before relapsing and resuming his use of heroin, he was also terminated
26  from the program after he failed to tell staff that he was taking pain medication.

27      During this period Israel's also began experiencing severe bouts of depression. He began
28  having suicidal ideations and was mentally unstable. It is unclear how long Israel had suffered

                                                    7                                        177

1  from mental illness before he was diagnosed with Bipolar Disorder in 2001. He was prescribed
2  Trazadone, Celexa, Buspar and Ambient. During the same time period Israel was also diagnosed
3  as having Hepatitis C. (See attached records from Santa Clara Valley Medical Center.)

4      Israel continued to take his medications but did not abstain from using drugs or alcohol.
5  He stopped taking his medications when he was sent to prison in 2002. In 2001 Israel made
6  several trips to Emergency Psychiatric Services at Valley Medical Hospital. The medical reports
7  pointed to Israel suffering from depression and feeling suicidal. Israel had no support to help him
8  conquer his mental illness he therefore attempted to mask the symptoms by using alcohol and
9  heroin.

10     Israel's mother, Bonnie stated, as reported in his medical reports, that Israel experienced
11 mood swings that seem to worsen with anti-depressant medication. As is pointed out in the
12 record, Bonnie said that her son had nothing to live for and feels as if he were dying. The
13 depression was so bad at times that Israel became suicidal. However, the same report reveals that
14 Israel had sought help and said that he wished to get better.

15     Unfortunately by 2002 Israel fell back into his addiction and his condition worsened
16 precipitously until he bottomed-out. He turned back to drinking heavily and using heroin as a
17 means to escape the perpetual sadness. Having no means of income to support his addiction, it
18 is when Israel went on a spree of breaking into people's homes, only targeting those houses that
19 were unoccupied at the time. After accepting a plea bargain and pleading no contest to six counts
20 of first-degree burglary, Israel was sentenced to 4 years in prison. While in prison Israel served
21 his entire term in the fire-camp as a model prisoner. He was not taking his psychiatric medication
22 and it was the first period of sobriety since he was a teenager.

23     It was at the fire-camp where Israel found for the first time an inner confidence, and
24 decided with a strong conviction to change and become a better person. The fire-camp for the
25 first time gave Israel the support and positive feedback that he has lacked his entire life and which
26 bolstered his self-esteem. Unfortunately after a month on parole Israel once again fell to the
27 pressure of his addiction and returned to alcohol and heroin as his only recourse to avoid the
28 depression. However, Israel recognized that his life was spiraling out of control and that he

8                                      178

1  needed help. Israel decided to reach out to Celebrate Recovery, a twelve-step outpatient program
2  in Santa Cruz. He consistently attended Narcotics Anonymous and joined the Santa Cruz Bible
3  Church.

4       Israel believes that both the twelve-step program and the church gave him positive
5  reenforcement because they allowed him to talk about his addictions and to confront some of his
6  personal reasons that turned him to drugs and alcohol. However, the struggle was a difficult one
7  and in February 2004 Israel was admitted to Emergency Psychiatric Services due to recurring
8  depression and feelings of helplessness. He again was prescribed Celxa and Buspar. (See
9  attached records from Santa Clara Valley Medical Center.)

10      For most of his live Israel has had very little insight into his mental disorder and therefore
11  he has spent the last four years fluctuating between taking his medications to attempting to control
12  the symptoms by using heroin and alcohol. He has in the past and currently expresses a strong
13  desire to enter an intensive drug program. His sponsor, Reed Fulkerson, feels that a dual
14  diagnosis drug program would benefit him in allowing him to address both his drug addiction and
15  allow him to gain an understanding of his mental disorder. He also states "Israel failed in his
16  sobriety because like any newcomer to sobriety he felt he could conquer his addiction by himself,
17  however without constant support and reaffirmation it is a difficult road." Israel is not a violent
18  felon who poses to be a threat to society in fact his strike priors are indicative of a man who went
19  through a manic desire to feed his drug addiction. His mental illness also played a significant role
20  in propelling him to continue his use of heroin. The facts of the current case also do not present
21  him to be a violent felon. We therefore respectfully ask that this court strike the prior strikes and
22  allow Israel to seek the help that he so desperately needs. Israel genuinely desires a life that can
23  be free from drugs and alcohol.

24  CONCLUSION:

25      Mr. McKenzie should be treated as though he falls outside the "spirit" of the Three Srikes
26  law. The courts have recognized that automatic imposition of Three Strikes for every offender
27  who at any time triggers the application of the statute is not in "furtherance of justice."
28

9

179

# EXHIBIT K

Ms. Johnston heard nothing, that her gardeners were somewhere nearby, and that there were no footprints on the carpet, although it had rained the day before. However, Ms. Johnston testified that she had a blower going in the kitchen, that the floor was carpeted, and that "[a] 400-pound man could walk in the door, and you wouldn't hear him." The gardeners were only there for "part of the time [she] was cooking." The day of the theft was "a lovely sunny day," supporting an inference that streets and sidewalks were dry, and "[y]ou would not see footprints on my carpet unless you had a really muddy foot."

Defendant's chief argument is that the evidence was insufficient to establish that the purse was in the house when it was taken. This hypothesis appears not to have been raised at trial. On the contrary, in argument to the jury defense counsel alluded to the lapse of time "between the time that Ms. Johnston had put her purse down in the dining room" and defendant's encounter with witness Ochinero. Later he again referred to "the moment she set the purse on the table." Defendant's belated suggestion that Ms. Johnston "was not sure" where she left the purse apparently rests on the fact that when she did not see it on the table, she spent as much as 20 minutes searching the rest of the house. This would no doubt have supported an argument to the jury—though none was made—but it hardly supports defendant's argument that her testimony was speculative. When an item goes missing, people often search in places where they do not expect to find it. This may betray uncertainty about where they left it, but it may also reflect the wishful hope that their memory, however definite, is wrong. Ms. Johnston's implied acknowledgment of the fallibility of human memory hardly impeaches her own distinct and uncontested recollection that she left the purse on the dining room table.

The evidence was sufficient to support an inference beyond a reasonable doubt that defendant took Ms. Johnston's purse from her home after entering for that purpose.

II. *Inference of Guilt from Possession*

Defendant contends that the trial court erred prejudicially by instructing the jury with CALJIC No. 2.15, which states that if the jury finds the defendant to have been in

4

Filed 5/3/06  P. v. McKenzie CA6

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 977(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 977(b). This opinion has not been certified for publication or ordered published for purposes of rule 977.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### SIXTH APPELLATE DISTRICT

THE PEOPLE,

Plaintiff and Respondent,

v.

ISRAEL NOEL MCKENZIE,

Defendant and Appellant.

H028695
(Santa Clara County
Super. Ct. No. CC448878)

 

Defendant Israel Noel McKenzie was sentenced to 30 years to life after a jury found him guilty of burglarizing a home by entering and stealing a purse from a dining room table. On appeal his primary contentions are that the evidence is insufficient to establish his entry into the home and that the sentence constitutes cruel and unusual punishment. We are constrained by binding authority to affirm the judgment with one modification as to which respondent concedes that the trial court erred.

### BACKGROUND

Evelyn Johnston, aged 82, testified that she lives alone in Saratoga where she owns a number of rental properties. She knew defendant because he lived in one of her rentals with a female tenant. Ms. Johnston had spoken to defendant twice before the incident at issue here. On one of these occasions defendant knocked on Ms. Johnston's door and asked to borrow $20. She felt pressured to lend him the money, but did not

**IV.** *AIDS Testing*

Defendant contends that the trial court erred by ordering him to undergo AIDS testing. The court ordered such testing "pursuant to P[enal] C[ode section] 1202.1." That statute authorizes compulsory AIDS testing when a defendant is convicted of certain sexual offenses; it has no application here. Respondent concedes the error. Accordingly, that order will be stricken.

### DISPOSITION

The judgment is modified by striking the requirement that defendant undergo AIDS testing. The trial court is directed to amend the abstract of judgment accordingly and to forward a certified copy of the amended abstract to the Department of Corrections. As so modified the judgment is affirmed.


_____ _____ _____

RUSHING, P.J.


I CONCUR:



___ _____ _____ _____

ELIA, J.

# EXHIBIT L

FEDERAL BUREAU OF INVESTIGATION, UNITED STATES DEPARTMENT OF JUSTICE
CRIMINAL JUSTICE INFORMATION SERVICES DIVISION, CLARKSBURG, WV 26306

PRIVACY ACT OF 1974 (P.L. 93-679) REQUIRES THAT FEDERAL, STATE, OR LOCAL AGENCIES INFORM INDIVIDUALS WHOSE SOCIAL SECURITY NUMBER IS REQUESTED WHETHER SUCH DISCLOSURE IS MANDATORY OR VOLUNTARY, BASIS OF AUTHORITY FOR SUCH SOLICITATION, AND USES WHICH WILL BE MADE OF IT.

| JUVENILE FINGERPRINT | DATE OF ARREST | ORI | | |
|---|---|---|---|---|
| SUBMISSION        YES ☐ | MM DD YY 07/02/2002 | CONTRIBUTOR | CA018015C | |
| TREAT AS ADULT    YES ☐ | | ADDRESS | CA CORR CTR SUSANVILLE, CA | |
| | | REPLY   YES ☐ DESIRED? | | |
| SEND COPY TO: (ENTER ORI) | DATE OF OFFENSE MM DD YY | PLACE OF BIRTH (STATE OR COUNTRY) MD | | COUNTRY OF CITIZENSHIP USA |
| MISCELLANEOUS NUMBERS | SCARS, MARKS, TATTOOS, AND AMPUTATIONS TAT UR ARM; TAT LF ARM; | | | |
| | RESIDENCE/COMPLETE ADDRESS | | CITY | STATE |
| OFFICIAL TAKING FINGERPRINTS (NAME OR NUMBER) | LOCAL IDENTIFICATION/REFERENCE T-58501 | | PHOTO AVAILABLE?    YES ☐ PALM PRINTS TAKEN?    YES ☐ | |
| EMPLOYER    IF U.S. GOVERNMENT, INDICATE SPECIFIC AGENCY. IF MILITARY, LIST BRANCH OF SERVICE AND SERIAL NO. | | | OCCUPATION | |
| CHARGE/CITATION CMT #001: CDC (#1) X006 PC459(A) FIRST DEGREE BURGLARY | 43 | SANTA CLARA | DISPOSITION 1. CRT/EE220921 SENT: 004 YRS | |
| 2. | | | 2. | |
| 3. | | | 3. | |
| ADDITIONAL | | | ADDITIONAL | |
| ADDITIONAL INFORMATION/BASIS FOR CAUTION | | | STATE BUREAU STAMP | |

FD-249 (REV 5-11-99)

160

# EXHIBIT M

1

2

3                                                        **F I L E D**

4                                                        MAR 2 0 2007

5                                                        KIRI TORRE
                                                         Chief Executive Officer
                                            Superior Court of CA County of Santa Clara
6                                            BY_____DEPUTY

7

8

9                      **SUPERIOR COURT OF CALIFORNIA**

10                          **COUNTY OF SANTA CLARA**

11

12   In re                          )
                                     )         No. CC448878
13     ISRAEL MCKENZIE               )         **O R D E R**
                                     )
14                                   )
                                     )
15   On Habeas Corpus                )
     _____)
16

17        ISRAEL MCKENZIE ("Petitioner") has filed a habeas corpus petition.  Petitioner contends he

18   received ineffective assistance of trial counsel and appellate counsel.

19        A habeas corpus petition "must state a 'prima facie case' for relief.  That is it must set forth

20   specific facts which, if true, would require issuance of the writ." (People v. Gonzalez (1990) 51 Cal.3d

21   1179, 1258.)   In order to demonstrate ineffective assistance of counsel, a defendant must show (1) that

22   his or her counsel's performance was deficient because the lawyer's representation fell below an objective

23   standard of reasonableness under prevailing professional norms and  (2) counsel's deficient performance

24   subjected the defendant to prejudice, i.e., there is a reasonable probability that, but for counsel's failings,

25   the result would have been more favorable to the defendant. (Strickland v. Washington (1984) 466 U.S.

26   668, 687-688, cited in In Re Harris (1993) 5 Cal.4th at 832-833; In Re Alvernas (1992) 2 Cal.4th 924,

27   936-937 and People v. Haskett (1990) 52 Cal.3d 210, 248.)

28        In the present case, petitioner has failed to show prejudice.  Petitioner fails to demonstrate how

     any of the alleged errors would have resulted in a more favorable outcome.  Additionally, petitioner has

                                          1

1  failed to establish that his attorneys fell below an objective standard of reasonableness. "A defendant

2  does not have the right to present a defense of his own choosing, but merely the right to an adequate and

3  competent defense. (See People v. Hamilton (1989) 48 Cal. 3d 1142, 1162.) ..."When a defendant

4  chooses to be represented by professional counsel, that counsel is 'captain of the ship' and can make all

5  but a few fundamental decisions for the defendant." (People v. Carpenter (1997) 15 Cal. 4th 312, 376.)"

6  (People v. Welch (1999) 20 Cal. 4th 701, 728-729.) The fact that petitioner's counsel did not raise the

7  arguments that petitioner would have wanted presented does not establish ineffective assistance.

8       Accordingly, the petition is DENIED. Petitioner's request for appointment of counsel for the

9  present petition is also denied.

10

11  DATED: ___**19  Mar**___, 2007

12                                    PAUL BERNAL
                                     JUDGE OF THE SUPERIOR COURT

13

14  cc:    Petitioner
         District Attorney
15         Research (2-21)

16

17

18

19

20

21

22

23

24

25

26

27

28

2

# EXHIBIT N

1

2          SUPERIOR COURT OF CALIFORNIA

3               COUNTY OF SANTA CLARA

4

5

6

7  In re                         )
                                 )     No.: CC448878
8      ISRAEL MCKENZIE           )     ORDER
                                 )
9  On Habeas Corpus              )
                                 )

10

11         ISRAEL MCKENZIE petitions this Court to reconsider its order

12  denying a previous petition for a writ of habeas corpus.

13         When a habeas corpus petition has once been denied, the

14  discretionary policy of this Court is to deny a new application based

15  on the same grounds, unless a change in the facts or law would compel

16  this Court to render a different decision.  (See In re Lynch (1972) 8

17  Cal.3d 410, 439 n.26; In re Swain (1949) 34 Cal.2d 300.)

18         Here there is no change in the facts or law which would compel

19  this Court to render a different decision.

20         Accordingly, the Petition is DENIED.

21

22  DATED: _23 Apr 2007_____        _____
                                              PAUL BERNAL
23                                            JUDGE OF THE SUPERIOR COURT

24

25  cc:  Petitioner
         District Attorney
26       Research
         CJIC

27

28

# EXHIBIT O



IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT



JUL 9 - 2007

MICHAEL J. YERLY, Clerk

By _____
            DEPUTY

In re ISRAEL MCKENZIE,

on Habeas Corpus.

H031517
(Santa Clara County
Super. Ct. No. CC448878)

BY THE COURT:

The petition for writ of habeas corpus is denied.

(Mihara, Acting P.J., and McAdams, J., participated in this decision.)

Dated    **JUL 9 - 2007**        **MIHARA, J.**        Acting P.J.

EXHIBIT
P

**S154489**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re ISRAEL NOEL MCKENZIE on Habeas Corpus

The petition for writ of habeas corpus is denied.

Werdegar, J., was absent and did not participate.

SUPREME COURT
**FILED**

JAN - **3** 2008

Frederick K. Ohlrich Clerk

_____

Deputy

**GEORGE**

_____

Chief Justice

ISRAEL NOEL McKENZIE T-58501
S.S.P. CORCORAN, 3B03 #203-LOW
P.O. BOX 3466, CORCORAN, CA.
93212-3466

CORCORAN STATE PRISON

INSPECTED
FEDERAL PROTECTIVE SERVICES
JAN X 0 2009

RECEIVED
JAN 1 8 2008
RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

U.S. DI
FOR T
U.S



PRIORITY MAIL
UNITED STATES POSTAL SERVICE®
LABEL 107, JUNE 2000     www.usps.com



STRICT COURT
HE NORTHERN DISTRICT
COURTHOUSE
450 GOLDEN GATE AVE.
SAN-FRANCISCO, CA.
94102-3483