1
2
3            UNITED STATES DISTRICT COURT
4            NORTHERN DISTRICT OF CALIFORNIA
5            OAKLAND DIVISION
6
7   ISRAEL NOEL McKENZIE
8                  Petitioner,              No. C 08-0551 PJH (PR)
9       vs.                                 **ORDER DENYING PETITION
                                            FOR WRIT OF HABEAS
10  DERRAL G. ADAMS, Warden,                CORPUS**
11                 Respondent.
                                  /
12
13          This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. §
14  2254.  The court ordered respondent to show cause why the writ should not be granted.
15  Respondent has filed an answer and a memorandum of points and authorities in support of
16  it, and has lodged exhibits with the court.  After the answer was filed, petitioner filed a
17  motion for appointment of counsel, which was denied.  Attached to the motion, however, is
18  what is clearly intended to be a traverse; it will be treated as such.  For the reasons set out
19  below, the petition is denied.
20                           **BACKGROUND**
21          Petitioner was convicted by a Santa Clara County jury of one count of first degree
22  residential burglary, *see* Cal. Penal Code §§ 459, 460(a), and one count of receiving stolen
23  property, *see id.* at § 496(a).  The court found that petitioner had suffered six prior
24  convictions for residential burglary.  Each of the prior convictions was a "strike."  *See id.* at
25  §§ 667(b)-(l).  Accordingly, the trial court sentenced petitioner to thirty years to life in state
26  prison.  He unsuccessfully appealed his conviction to the California Court of Appeal and the
27  Supreme Court of California denied review.  His state habeas petitions also were denied.
28          The following facts are excerpted from the opinion of the California Court of Appeal:

United States District Court
For the Northern District of California

Evelyn Johnston, aged 82, testified that she lives alone in Saratoga where she owns a number of rental properties. She knew defendant because he lived in one of her rentals with a female tenant. Ms. Johnston had spoken to defendant twice before the incident at issue here. On one of these occasions defendant knocked on Ms. Johnston's door and asked to borrow $20. She felt pressured to lend him the money, but did not have $20 in cash so offered to take him to the bank to get it. At his insistence, she drove with him to the bank, cashed a $20 check, gave him the proceeds, and dropped him off at a bus station. He gave her an I.O.U. which was later redeemed by the tenant with whom he lived.

On March 2, 2004, Ms. Johnston went shopping, arriving home around 12:30 p.m. She went into the kitchen to cook, leaving the front door open, the screen door ajar, and her purse on the dining room table, where it could easily be seen from the front door. While in the kitchen, she heard no sounds of entry; but although her hearing is good, she had a blower going. After an hour or an hour and a half in the kitchen, she became concerned about the fact that she had left the door open and her purse close to it. She went into the dining room and found the purse gone. She searched the rest of the house to no avail. In the purse were keys, some notes to herself, some credit and ATM cards, eight to 10 dollars in cash, and two checkbooks, one from Bank of America and one from Wells Fargo Bank. About 1:55 p.m. she called 911.

Arleigh Ochinero testified that around 3:00 p.m. on March 2, 2004, he went to the Bank of America in Saratoga to use the ATM. He was approached by defendant, who asked him to cash a check for defendant's grandmother. Mr. Ochinero saw the name "Evelyn Johnston" printed on the checks. He declined defendant's request, became suspicious, and at 2:52 p.m. called 911, giving a description that included a distinctive tattoo matching one defendant displayed in open court. The next morning, Mr. Ochinero identified defendant, who was then in custody, as the man who approached him at the bank.

A postal service employee found Ms. Johnston's purse in a mailbox near the sheriff's department in downtown Saratoga. It was retrieved by a deputy and returned to Ms. Johnston. The purse was clean and undamaged, and the only things missing were one checkbook and a small amount of cash. The missing checks were never used.

Ex. F (Unpublished Opinion of the California Court of Appeal, Sixth Appellate District,

*People v. McKenzie*, No. H028695 (May 3, 2006)) at 1-3.[1]

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on

the basis of a claim that was reviewed on the merits in state court unless the state court's

adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an

_____

[1] Citations to "Ex." are to the exhibits of the record filed by the Attorney General.

United States District Court
For the Northern District of California

1 unreasonable application of, clearly established Federal law, as determined by the

2 Supreme Court of the United States; or (2) resulted in a decision that was based on an

3 unreasonable determination of the facts in light of the evidence presented in the State court

4 proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to

5 mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000),

6 while the second prong applies to decisions based on factual determinations, *Miller-El v.*

7 *Cockrell*, 537 U.S. 322, 340 (2003).

8  A state court decision is "contrary to" Supreme Court authority, that is, falls under the

9 first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that

10 reached by [the Supreme] Court on a question of law or if the state court decides a case

11 differently than [the Supreme] Court has on a set of materially indistinguishable facts."

12 *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application

13 of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly

14 identifies the governing legal principle from the Supreme Court's decisions but

15 "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The

16 federal court on habeas review may not issue the writ "simply because that court concludes

17 in its independent judgment that the relevant state-court decision applied clearly

18 established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must

19 be "objectively unreasonable" to support granting the writ. *Id.* at 409.

20  Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual

21 determination will not be overturned on factual grounds unless objectively unreasonable in

22 light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at

23 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

24  When there is no reasoned opinion from the highest state court to consider the

25 petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*,

26 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th

27 Cir.2000).

28          **DISCUSSION**

**United States District Court**

For the Northern District of California

**United States District Court**
For the Northern District of California

1    **I.    Evidentiary Hearing**

2         Petitioner asks for an evidentiary hearing in his traverse.

3         An evidentiary hearing is held in federal habeas cases only under the most limited

4    circumstances. *Baja v. Ducharme*, 187 F.3d 1075, 1077-79 (9th Cir. 1999).  An evidentiary

5    hearing on a claim for which the petitioner failed to develop a factual basis in state court

6    can be held only if petitioner shows that: (1) the claim relies either on (a) a new rule of

7    constitutional law that the Supreme Court has made retroactive to cases on collateral

8    review, or (b) a factual predicate that could not have been previously discovered through

9    the exercise of due diligence, and (2) the facts underlying the claim would be sufficient to

10   establish by clear and convincing evidence that but for constitutional error, no reasonable

11   fact finder would have found the applicant guilty of the underlying offense.  28 U.S.C. §

12   2254(e)(2)(A)-(B).  In short, if the petitioner did not attempt to present in state court the

13   facts he wishes to present now, for instance by attempting to develop them in state habeas

14   proceedings, he cannot do so now unless he can show that he meets the provisions of

15   section 2254(e)(2) outlined above.

16        A prisoner "fails" to develop the factual basis of a claim, triggering § 2254(e)(2), if

17   "there is lack of diligence, or some greater fault, attributable to the prisoner or the prisoner's

18   counsel." *Williams (Michael) v. Taylor*, 529 U.S. 420, 432 (2000).  "Diligence will require in

19   the usual case that the prisoner, at a minimum, seek an evidentiary hearing in state court in

20   the manner prescribed by state law." *Id.* at 437.  Accordingly, where the prisoner has met

21   the burden of showing diligent efforts to develop the facts supporting his claims in state

22   court, an evidentiary hearing may be held without regard to whether the "stringent"

23   requirements of § 2254(e)(2) apply. *Id.* at 437; *Jaramillo v. Stewart*, 340 F.3d 877, 882 (9th

24   Cir. 2003); *Jones v. Wood*, 114 F.3d 1002, 1013 (9th Cir. 1997).

25        It is the petitioner's burden to show that he attempted to develop the facts in state

26   court but was prevented from doing so, for instance by showing that the state court denied

27   a request for an evidentiary hearing. *Hutchison v. Bell*, 303 F.3d 720, 747 (6th Cir. 2002)

28   (requiring petitioner to demonstrate "sufficient diligence"); *Baja,* 187 F.3d at 1078-79.

United States District Court

For the Northern District of California

1    Although petitioner recites the above standards, he does not present any information

2   showing that he acted with due diligence in attempting to develop the facts in state court,

3   whether by requesting an evidentiary hearing or submitting declarations there.  He thus has

4   failed to develop facts in state court, and because he has not attempted to show that the

5   exceptions of Section 2254(e)(2)(A)-(B) apply to him, is not entitled to an evidentiary

6   hearing.

7    Furthermore, petitioner provides no factual allegations regarding what he would

8   expect to show if a hearing were to be held.  Thus, even if he had not failed to show that he

9   attempted to develop the facts in state court and was prevented from doing so, he has not

10  shown an entitlement to an evidentiary hearing under the pre-AEDPA standard.  *See*

11  *Williams v. Calderon*, 52 F.3d 1465, 1484 (9th Cir. 1995) (to establish right to evidentiary

12  hearing, petitioner must provide allegations of fact that, if proven, would establish right to

13  relief).

14    The motion for an evidentiary hearing will be denied.

15  **II.    Petitioner's Claims**

16    As grounds for habeas relief, petitioner asserts that: (1) there was insufficient

17  evidence to support his conviction for first degree residential burglary; (2) the trial court

18  violated his due process rights by instructing the jury with CALJIC 2.15; (3) there was

19  prosecutorial misconduct; (4) his 2002 plea was not knowing and voluntary because he

20  was not told that his six prior burglaries would count as six strikes; (5) the trial court's

21  imposition of a sentence enhancement for the prior offenses constituted double jeopardy;

22  (6) his trial counsel was ineffective; (7) his appellate counsel was ineffective; and (8) his

23  sentence is cruel and unusual punishment.

24  **1.    Sufficiency of Evidence**

25    The Due Process Clause of the Fourteenth Amendment "protects the accused

26  against conviction except upon proof beyond a reasonable doubt of every fact necessary to

27  constitute the crime with which he is charged."  *In re Winship*, 397 U.S. 358, 364 (1970).  A

28  federal court reviewing collaterally a state court conviction does not determine whether it is

**United States District Court**
For the Northern District of California

satisfied that the evidence established guilt beyond a reasonable doubt.  *Payne v. Borg*, 982 F.2d 335, 338 (9th Cir. 1992).  When reviewing a claim of insufficient evidence in a habeas petition, a federal court must determine whether, viewing the evidence and the inferences to be drawn from it in the light most favorable to the prosecution, any rational trier of fact could find the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979).  Only if no rational trier of fact could have found proof of guilt beyond a reasonable doubt, may the writ be granted.  *See Jackson*, 443 U.S. at 324; *Brown v. Farwell*, 525 F.3d 787, 794 (9th Cir. 2008).

A federal court evaluating the evidence under *In re Winship* and *Jackson* should take into consideration all of the evidence presented at trial.  *LaMere v. Slaughter*, 458 F.3d 878, 882 (9th Cir. 2006).  If confronted by a record that supports conflicting inferences, a federal habeas court "must presume -- even if it does not affirmatively appear on the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."  *Jackson*, 443 U.S. at 326.  A jury's credibility determinations are therefore entitled to near-total deference.  *Bruce v. Terhune*, 376 F.3d 950, 957 (9th Cir. 2004).  Except in the most exceptional of circumstances, *Jackson* does not permit a federal habeas court to revisit credibility determinations.  *See id.*; *see also People of the Territory of Guam v. McGravey*, 14 F.3d 1344, 1346-47 (9th Cir. 1994).

Moreover, the prosecution need not affirmatively rule out every hypothesis except that of guilt.  *Wright v. West*, 505 U.S. 277, 296-97 (1992) (quoting *Jackson*, 443 U.S. at 326).  The existence of some small doubt based on an unsupported yet unrebutted hypothesis of innocence therefore is not sufficient to invalidate an otherwise legitimate conviction.  *Taylor v. Stainer*, 31 F.3d 907, 910 (9th Cir. 1994) (three hypotheses regarding petitioner's fingerprints which government failed to rebut unsupported by evidence and therefore insufficient to invalidate conviction).  Circumstantial evidence and inferences drawn from that evidence may be sufficient to sustain a conviction.  *Walters v. Maass*, 45 F.3d 1355, 1358 (9th Cir. 1995).  However, mere suspicion or speculation does not rise to the level of sufficient evidence.  *United States v. Stauffer*, 922 F.2d 508, 514 (9th Cir.

1   1990).  Yet, the fact that the inferences are drawn primarily from circumstantial evidence

2   does not make them erroneous or unreasonable.  *United States v. Kelly*, 527 F.2d 961, 965

3   (9th Cir.1976) (circumstantial evidence can be used to prove any fact, including facts from

4   which another fact is to be inferred, and is not to be distinguished from direct evidence).

5          Under California law, a person is guilty of burglary when he or she enters any

6   building with the intent to steal, take, and carry away someone else's property with the

7   intention of depriving them permanently of that property.  Cal. Penal Code § 459.

8          Petitioner argues there was insufficient evidence to prove his guilt beyond a

9   reasonable doubt because the evidence did not show "how petitioner came into possession

10  of the checks."  Petition at 6-X of 7.  He contends that there is no evidence that he or

11  anyone else actually entered Johnston's residence.  *Id.*  He points out that there were no

12  footprints on the carpet.  *Id.* at 6-Z of 7.  Additionally, he states that the only people known

13  to be near the house were  Johnston's gardener and his assistant.  *Id.*

14         In rejecting petitioner's claims, the California Court of Appeal held:

15         Defendant's chief argument is that the evidence was insufficient to establish
       that the purse was in the house when it was taken.  This hypothesis appears

16     not to have been raised at trial.  On the contrary, in argument to the jury
       defense counsel alluded to the lapse of time "between the time that Ms.

17     Johnston had put her purse down in the dining room" and defendant's
       encounter with witness Ochinero.  Later he again referred to "the moment she

18     set the purse on the table."  Defendant's belated suggestion that Ms.
       Johnston "was not sure" where she left the purse apparently rests on the fact

19     that when she did not see it on the table, she spent as much as 20 minutes
       searching the rest of the house.  This would no doubt have supported an

20     argument to the jury-though none was made-but it hardly supports
       defendant's argument that her testimony was speculative.  When an item

21     goes missing, people often search in places where they do not expect to find
       it. This may betray uncertainty about where they left it, but it may also reflect

22     the wishful hope that their memory, however definite, is wrong.  Ms.
       Johnston's implied acknowledgment of the fallibility of human memory hardly

23     impeaches her own distinct and uncontested recollection that she left the
       purse on the dining room table.

24  Ex. F at 4.

25         The evidence shows that on March 2, 2004, Johnston arrived home from grocery

26  shopping at about 12:30 p.m.  Reporter's Transcript ("RT") at 44.  When she arrived at her

27  residence she left the front door unlocked.  RT at 44-45.  She set her purse on the dining

28  room table, which is visible from the front door.  RT at 46.  The contents of her purse

*United States District Court*
For the Northern District of California

7

United States District Court

For the Northern District of California

1  included a Bank of America checkbook and eight to ten dollars in cash.  RT at 50.  She

2  later returned to her dining room to find her purse not there.  RT at 50.  She called 9-1-1 at

3  1:55 p.m. RT at 51.  Within an hour after Johnston reported the missing purse, petitioner

4  was at a bank attempting to cash a check from the Bank of America check book reported

5  missing by Johnston.  It was the same bank from which Johnston had cashed another

6  check for petitioner a month earlier. RT at 37, 38, 41.  Furthermore, upon return of her

7  purse, Johnston noted that her Bank of America checkbook and $8-10 were missing.  RT at

8  53.  Drawing logical inferences from this evidence, "any rational trier of fact could have

9  found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S.

10  at 319.

11      Most of petitioner's assertions relating to his sufficiency of the evidence claim are

12  premised on his version of the incident and his interpretation of the evidence.  In particular,

13  petitioner focuses on alleged inconsistencies in the evidence – for example, the timing of

14  Ochinero's appointment.  However, petitioner points to no *facts* in the record that rebut the

15  strong circumstantial evidence from which a rational jury could conclude that he did enter

16  Johnston's residence.  Irrespective of the fact that no one saw him enter or attempt to enter

17  the residence at issue, the jury could properly infer from the evidence that was presented

18  that he did so.

19      Petitioner essentially asks this court to reweigh the evidence and to ignore the

20  rational inferences that could be drawn from the circumstantial evidence presented at his

21  trial.  That would not be a proper application of the *Jackson* standard.  *See Kelly*, 527 F.2d

22  at 965 (fact that the inferences are drawn primarily from circumstantial evidence does not

23  make them erroneous or unreasonable).  This claim is without merit.

24      **2.      Use of CALJIC 2.15**

25      Petitioner claims that the trial court's giving CALJIC No. 2.15" was prejudicial error

26  based on the evidence in this case under due process of law." Pet. at 6CC of 7.  He

27  contends that instructing the jury that only "slight" corroboration is necessary to establish

28  his guilt lessened the prosecution's burden of establishing every element of his offense

United States District Court

For the Northern District of California

1   beyond a reasonable doubt.  *Id.*  The California Court of Appeal found no error in giving the

2   instruction:

> The gist of the instruction was that the jury could *not* infer all of the elements
> of the offense solely from the defendant's possession of stolen property, but
> could infer those elements, if it chose, from possession plus other evidence
> supporting an inculpatory inference.  Here there was evidence that defendant
> knew the victim, lived across the street from her, had visited her front door
> previously to borrow money, could have seen the unattended purse from the
> front door, and used some of the stolen property to attempt to obtain cash
> less than an hour after the property was reported stolen.  These
> circumstances amply supported an inference of burglary, i.e., entry with the
> intent to steal.  We fail to see how the challenged instruction could have any
> adverse effect on the evaluation of this evidence.

9   Ex. F at  5-6.

10      CALJIC No. 2.15, as read to petitioner's jury, is as follows:

> If you find that [petitioner] was in possession of recently stolen property, the
> fact of that possession is not by itself sufficient to permit an inference that
> [petitioner] is guilty of the crime of residential robbery.  Before guilt may be
> inferred, there must be corroborating evidence tending to prove [petitioner's]
> guilt.  However, this corroborating evidence need only be slight, and need not
> by itself be sufficient to warrant an inference of guilt.
> As corroboration, you may consider the attributes of possession - time, place
> and manner, that [petitioner] had an opportunity to commit the crime charged,
> [petitioner's] conduct and other statements he may have made with reference
> to the property, a false account of how he acquired possession of the stolen
> property, and any other evidence which tends to connect [petitioner] with the
> crime charged.

18   Clerk's Transcript ("CT") at 112; RT at 258, 276-277.

19      Due Process requires the prosecution to prove every element charged in a criminal

20   case beyond a reasonable doubt.  *In re Winship*, 397 U.S. at 364.  To obtain federal

21   collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction

22   by itself so infected the entire trial that the resulting conviction violates due process.  *See*

23   *Estelle v. McGuire*, 502 U.S. 62, 72 (1991).

24      In the instant case, the instruction at issue is an inference instruction.  The first step

25   in analyzing whether an instruction that creates an evidentiary inference violates due

26   process by relieving the State of its burden of proving each element of a crime beyond a

27   reasonable doubt is to determine whether the instruction creates a mandatory presumption

28   or a permissive inference.  *See United States v. Warren*, 25 F.3d 890, 897 (9th Cir. 1994).

United States District Court

For the Northern District of California

"A mandatory presumption tells the jury that it must presume that an element of a crime has been proven if the government proves certain predicate facts." *Id.* By contrast, "a permissive inference instruction allows, but does not require, a jury to infer a specified conclusion if the government proves certain predicate facts." *Id.* A jury instruction is constitutionally sound if it creates a permissive inference that allows, but does not require, the jury to infer an essential fact from proof of another fact so long as "the inferred fact is more likely than not to flow from the proved fact on which it is made to depend." *Schwendeman v. Wallenstein*, 971 F.2d 313, 316 (9th Cir. 1992) (citations and internal quotation marks omitted); see *County Court v. Allen*, 442 U.S. 140, 157 (1979) (stating permissive inferences allow but do not require the trier of fact to infer the elemental fact from proof by the prosecutor of the basic one and place no burden of any kind on the defendant).

The first two sentences of CALJIC 2.15 make clear that the requisite corroborating evidence creates a permissive inference rather than a mandatory presumption, and does not purport to modify or lessen the State's burden of proof. *See Barnes v. United States*, 412 U.S. 837, 841 (1973) (upholding jury instruction that allowed the jury to infer guilt from the "unexplained possession of recently stolen property"). Petitioner contends that the challenged instruction allowed the jury to convict petitioner of residential burglary based solely on petitioner's possession of the victim's checks. According to petitioner, because it is "highly unlikely" that a jury would have convicted petitioner of burglary, the instruction told the jury to infer guilt of burglary even when the evidence proved only receiving stolen property. However, since CALJIC No. 2.15 only creates a permissive inference – it does not require the jury to infer any fact – the instruction does not lessen the state's burden of proving every element. Rather, it informs the jury that "possession is not by itself sufficient to permit an inference" and, further, requires corroborative evidence "before" the jury is allowed to draw an inference. In fact, it instructs the jury that mere possession of stolen property is *insufficient* to find a defendant committed burglary.

Furthermore, on habeas review the challenged instruction is not viewed in isolation,

United States District Court

For the Northern District of California

but as part of the overall jury charge. *See Estelle*, 502 U.S. at 72. The trial court instructed the jury that (1) guilt must be established beyond a reasonable doubt and (2) the burden of proof is on the prosecution. CT at 122, 123. The judge also instructed the jury that the facts could be proved by circumstantial evidence, defining circumstantial evidence as evidence that, if found true, proved a fact from which an inference of another fact might be drawn. CT at 108. The judge further instructed the jury that, if the circumstantial evidence was susceptible of two reasonable interpretations, one of which pointed to petitioner's guilt and one of which pointed to petitioner's innocence, the jury was required to adopt that interpretation which pointed to petitioner's innocence and to reject that interpretation which pointed to petitioner's guilt. CT at 109. The jury is presumed to have followed the court's instructions. *See Weeks v. Angelone*, 528 U.S. 225, 234 (2000). The instructions as a whole protected the jury from any temptation to interpret 2.15 as petitioner does.

Because the instruction in isolation did not violate petitioner's rights, and even more clearly did not as part of the jury charge as a whole, this claim is without merit.

### 3.    Prosecutorial Misconduct

Petitioner next claims that in closing argument the prosecutor based part of his argument on CALJIC 2.15, thereby improperly arguing for a lower burden of proof for the prosecution. Pet. 6-I, 6-J of 7. Petitioner incorporates in his argument the claims of insufficiency of evidence and the unconstitutionality of CALJIC 2.15. *Id.* As discussed above, the instruction was proper and there was sufficient evidence to support submitting it to the jury, so the prosecutor's argument was not erroneous, much less misconduct. This part of the misconduct claim is without merit.

Petitioner also complains that in closing argument the prosecutor said, "possession of checks is sufficient evidence of residential burglary." Petition at 6-I of 7. The record is different:

> "And I submit to you that his possession of these checks up in Saratoga, trying to get it cashed is sufficient circumstantial proof that he's the person who entered her house, because there ain't anybody else who has any of the property. Nobody else."

United States District Court

For the Northern District of California

1   RT at 303.

2       Petitioner is not entitled to relief based on his interpretation of the prosecutor's

3   words.  *See James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which

4   are not supported by a statement of specific facts do not warrant habeas relief.").

5       Lastly, petitioner objects to the statement, "she didn't make a mistake, she left her

6   purse on the dining room table."  Petition at 6-I of 7; RT at 280.  During closing argument,

7   the prosecutor has wide latitude, including the freedom to argue reasonable inferences

8   based on the evidence.  *Menendez v. Terhune*, 422 F.3d 1012, 1037 (9th Cir. 2005);

9   *United States v. Molina*, 934 F.2d 1440, 1445 (9th Cir. 1991).  "Counsel are given latitude

10  in the presentation of their closing arguments, and courts must allow the prosecution to

11  strike hard blows based on the evidence presented and all reasonable inferences

12  therefrom."  *Ceja v. Stewart*, 97 F.3d 1246, 1253-54 (9th Cir. 1996).  The court views a

13  prosecutor's challenged remarks in the context of the entire trial.  *See Greer v. Miller*, 483

14  U.S. 756, 765-66 (1987); *see also Donnelly v. DeChristoforo*, 416 U.S. 637, 639-43 (1974).

15       As discussed above, a reasonable inference from the evidence is that the purse

16  was in the house.  That petitioner claims this contention is false is insufficient to obtain

17  habeas relief on this claim.

18       In essence, petitioner's complaint throughout this issue is that the prosecutor in

19  closing argued for interpretations of the evidence that would favor petitioner's guilt,

20  something he was entitled to do as long as there was evidence to support his version, as

21  there was.  The claims of prosecutorial misconduct are without merit.

22      **4.    2002 Plea**

23       Petitioner alleged in his petition that he was promised by his attorney that his 2002

24  guilty pleas on six burglary charges would only count as one strike.  When respondent

25  provided a transcript of the plea that clearly showed that petitioner had been told by the

26  court that he now would have six strikes, Change of Plea Transcript at 5-6, petitioner

27  changed the grounds for this issue, saying in the traverse that his plea was not knowing

28  and intelligent.  However, new issues cannot be raised in a traverse.  *See Cacoperdo v.*

United States District Court

For the Northern District of California

*Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994).

In any event, the basis for petitioner's claim does not matter, because whatever the claim he cannot attack a prior conviction used to enhance the present sentence in a habeas case directed to the present sentence.  *See Lackawanna County Dist. Attorney v. Coss*, 532 U.S. 394, 403-04 (2001) .  This claim is without merit.

**5.    Double Jeopardy**

Petitioner claims that the imposition of an enhancement for prior convictions violated his double jeopardy rights.  The Double Jeopardy Clause of the Fifth Amendment guarantees that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb."  U.S. Const. amend. V.  The Supreme Court in *Benton v. Maryland*, 395 U.S. 784, 794 (1969) held that the Clause's protections were applicable to the states through the Fourteenth Amendment.

The guarantee against double jeopardy protects against (1) a second prosecution for the same offense after acquittal or conviction, and (2) multiple punishments for the same offense.  *Witte v. United States*, 515 U.S. 389, 395-96 (1995).  But it is well-settled that an enhancement of the punishment imposed for a later offense "'is not to be viewed as either a new jeopardy or additional penalty for the earlier crimes,' but instead as 'a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one.'"  *Witte*, 515 U.S. at 400 (quoting *Gryger v. Burke*, 334 U.S. 728, 732 (1948)); *accord United States v. Kaluna*, 192 F.3d 1188, 1198-99 (9th Cir. 1999).  The enhancement of petitioner's sentence because of his prior convictions thus did not violate the Double Jeopardy Clause.  This claim is without merit.

**6.    Ineffective Assistance of Trial Counsel**

Petitioner sets forth a laundry list of alleged failures of petitioner's appointed trial attorney.  Most of petitioner's allegations in this regard are vague, speculative, and lacking in factual detail.  To the extent possible, petitioner's specific allegations about counsel's acts and omissions will be addressed below.

There is no written, reasoned state court decision on these issues.  Accordingly, this

**United States District Court**
For the Northern District of California

1    court has conducted an independent review of the record and the relevant federal law as

2    appropriate in determining whether the state court's decisions on these issues were

3    "contrary to, or involved an unreasonable application of, clearly established federal law."

4    *Delgado v. Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

5                    **A.    Legal Standard**

6           "[T]he right to counsel is the right to the effective assistance of counsel."  *Strickland*

7    *v. Washington*, 466 U.S. 668, 686 (1984) (quoting *McMann v. Richardson*, 397 U.S. 759,

8    771 n.14 (1970)).  "An ineffective assistance claim has two components: [a] petitioner must

9    show that counsel's performance was deficient, and that the deficiency prejudiced the

10   defense." *Wiggins v. Smith*, 539 U.S. 510, 521 (2003) (citing *Strickland*, 466 U.S. at 687).

11   The court is not required to find counsel's performance deficient before considering whether

12   the performance prejudiced petitioner's defense.  *Strickland*, 466 U.S. at 697.  If the

13   petitioner makes an insufficient showing of either component, the court does not have to

14   consider the other.  *Id.*  Specifically, "[i]f it is easier to dispose of an ineffectiveness claim on

15   the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

16          "To establish deficient performance, a petitioner must demonstrate that counsel's

17   representation 'fell below an objective standard of reasonableness.'"  *Wiggins*, 539 U.S. at

18   521 (quoting *Strickland*, 466 U.S. at 688).  The Supreme Court has "declined to articulate

19   specific guidelines for appropriate attorney conduct and instead [has] emphasized that 'the

20   proper measure of attorney performance remains simply reasonableness under prevailing

21   professional norms.'"  *Id.*  But, judicial scrutiny of counsel's performance must be highly

22   deferential, and review must start with a strong presumption that counsel's conduct falls

23   within the wide range of reasonable professional assistance.  *See Strickland*, 466 U.S. at

24   689.  In addition, a determination of the reasonableness of defense counsel's conduct is

25   based on the facts of the particular case viewed from the time of counsel's conduct.  *Id.* at

26   690.  Thus, the relevant inquiry is not what defense counsel could have done, but rather

27   whether the choices made by defense counsel were reasonable.  *Babbitt v. Calderon*, 151

28   F.3d 1170, 1173 (9th Cir. 1998).  Therefore, a claim of ineffective assistance of counsel

United States District Court

For the Northern District of California

1   requires an identification of the acts or omissions of counsel that are alleged to have been

2   objectively unreasonable.  *Strickland*, 466 U.S. at 690.

3       To establish Strickland's prejudice requirement, a petitioner must show that there is

4   a reasonable probability that, but for counsel's errors, the proceeding's result would have

5   been different.  *See Hill v. Lockhart*, 474 U.S. 52, 57 (citing *Strickland*, 466 U.S. at 694);

6   *Iaea v. Sunn*, 800 F.2d 861, 865 (9th Cir. 1986).  "A reasonable probability is a probability

7   sufficient to undermine confidence in the outcome."  *Strickland*, 466 U.S. at 694.

8                          **B.      Analysis**

9       Petitioner asserts nine ways in which he contends trial counsel was ineffective,

10   some of which have multiple sub-claims.

11       In presenting habeas claims, "'notice' pleading is not sufficient, for the petition is

12   expected to state facts that point to a 'real possibility of constitutional error.'"  Rule 4

13   Advisory Committee Notes (quoting *Aubut v. Maine*, 431 F.2d 688, 689 (1st Cir. 1970).

14   "Habeas petitions which appear on their face to be legally insufficient are subject to

15   summary dismissal."  *Calderon v. United States Dist. Court (Nicolaus)*, 98 F.3d 1102, 1108

16   (9th Cir. 1996) (Schroeder, J., concurring).  Those of petitioner's claims that do not contain

17   facts sufficient to point to a real possibility of constitutional error will be summarily denied

18   below.

19                          **i.      Failure to Investigate**

20       Petitioner argues that counsel should have conducted more investigation to support

21   his defense.  This issue has eight subclaims.

22       Petitioner's first contention under "failure to investigate" is, in its entirety, "Gardener

23   and helper never questioned (see exhibits A & D)."  Pet. 6-C of 7.  Exhibit A is petitioner's

24   affidavit; it contains no allegation what the gardener and his helper would be expected to

25   say.  Exhibit D is a police report in which the reporting officer says that the gardener had

26   worked for the victim for twenty years and that she trusted him completely, and that she did

27   not even know the helper's name, and part of defense counsel's closing argument, in which

28   counsel, arguing the absence of evidence in the case, referred to the police officers' failure

1    to talk to the gardener and his helper.

2           Mere speculation that a witness might have given helpful information if interviewed is

3    not enough to establish ineffective assistance. *Bragg v. Galaza*, 242 F.3d 1082, 1087 (9th

4    Cir.), *amended*, 253 F.3d 1150 (9th Cir. 2001).  The petitioner must show what information

5    the witness would have provided. *Id.*  Neither of the exhibits petitioner cites provides any

6    indication what the gardener or the helper would have said and how it would have assisted

7    petitioner.  Petitioner's unsupported allegations are insufficient to establish either deficient

8    performance by counsel or prejudice.  This claim is without merit.

9           Petitioner's also contends that counsel was ineffective in failing to investigate

10   whether footprints were found at the scene.  The point of this is unclear because petitioner

11   never says what he expects such an investigation would have revealed, or how the

12   information could be used in his defense.  Petitioner has failed to provide facts sufficient to

13   point to a real possibility of constitutional error.  And in any event, evidence was in fact

14   introduced at trial as to whether any footprints were found.

15              [Prosecutor]: Did you notice any muddy footprints or anything that
         would suggest someone with dirty shoes had walked across the carpet?
16
                [Deputy Munch]: No, sir.
17
         [. . .]
18
                [Defense counsel Gallardo]: You . . . said that you looked around the
19       carpet and flooring to see if there was any footprints.  Did you do that
         yourself?
20
                [Deputy Munch]: When I walked in, I noticed inside the residence.
21
                [Ms. Gallardo]: Where you actively looking to see if you found
22       footprints, or it was just something that you saw as you walked–

23              [Deputy Munch]: Just as I walked in.

24              [Ms. Gallardo]: Did you think about looking for any footprints inside the
         house?
25
                [Deputy Munch]: Specifically?
26
                [Ms. Gallardo]: Yes.
27
                [Deputy Munch]: No, ma'am.
28
     RT at 206-207; 214-215.

United States District Court
For the Northern District of California

United States District Court

For the Northern District of California

1    There is no merit to this claim.

2    Petitioner also lists under the heading "failure to investigate":   "Innocent intent to

3    return property is defense to stolen property;" "erroneously excluded petitioner's statement

4    he found purse;" "to whether or not petitioner was found with any stolen property . . . ;" "that

5    the purse was not taken from the house . . .;" and "petitioner being under the influence of

6    alcohol and narcotics when trying to cash checks, when fully aware . . . ."[2]  As to none of

7    these does he provide facts, either in the petition or the exhibits he cites in support of the

8    claims, that show a real possibility of constitutional error.  These claims are summarily

9    denied.

10    Finally, petitioner contends that counsel failed to question his cohabitant, Hiromi

11    Higashi.  He has provided a declaration from Higashi, who says that petitioner told her that

12    he had found the purse and wanted to return it.  Trav. at Ex. A-5.  Aside from the minimal

13    value of such testimony from a cohabitant, the testimony of course would have been

14    hearsay and not admissible.[3]  Petitioner has failed to show that he was prejudiced by any

15    failure to interview Higashi.

16                              **ii.    Petitioner's Desire to Testify**

17    Petitioner contends that his attorney was ineffective in not allowing him to testify.  If

18    he had done so, the trial court would have allowed him to be impeached with three of his

19    six prior convictions for residential burglary, the crime with which he was charged here.  RT

20    at 14-15. He also has not shown what his testimony would have been or how it would have

21    led to a different outcome.  This claim is without merit.

22                              **ii.    Sufficiency of the Evidence**

23

24        [2] Evidence of voluntary intoxication is "admissible solely on the issue of whether or not
the defendant actually formed a required specific intent, or, when charged with murder,
25    whether the defendant premeditated, deliberated, or harbored express malice aforethought."
Cal. Penal Code § 22.  This claim goes only to the stolen property count.  As receiving stolen
26    property is a general intent crime in California, *see People v. Wielograf*, 101 Cal.App.3d 488,
494 (1980), evidence of petitioner's voluntary intoxication would not have been admissible.
27

28        [3] Contrary to petitioner's contention, a statement the he found the purse and wanted
to return it would not be against his penal interest.

17

1    Petitioner contends that counsel failed to "challenge insufficient evidence of burglary.

2  . . . ."  As discussed above, there was sufficient evidence to support the verdict.  Any failure

3  of counsel to raise the issue was not prejudicial.

4                    **iv.    Failure to Present Available Defenses**

5    Under this heading petitioner presents seven subclaims.  Of these, his claim that

6  counsel should not have agreed to exclude petitioner's statement to police, that she should

7  have investigated the gardener and helper, and that she failed to argue insufficiency of the

8  evidence, are rejected above.

9    Under this heading petitioner also contends that counsel was ineffective by not

10  presenting an opening statement or presenting a case in chief.

11    Although it is true that petitioner's trial counsel did not make an opening statement,

12  RT at 223-224, this decision does not amount to ineffective assistance of counsel.  *See*

13  *LaGrand v. Stewart*, 133 F.3d 1253, 1275 (9th Cir. 1998) ("[T]he timing of opening

14  statement, including the decision on whether or not to make one, is a trial tactic and does

15  not constitute a basis for a claim of ineffective assistance." (construing *United States v.*

16  *Rodriguez-Ramirez*, 777 F.2d 454, 458 (9th Cir. 1985))).  Counsel's decision not to present

17  evidence also was consistent with her strategy of arguing that the state had not met its

18  burden of proof, a perfectly reasonable tactic given the weakness of the state's case.  This

19  claim is without merit.

20    Petitioner also contends that counsel was ineffective "by not getting experts to

21  counter the prosecution's witness for fingerprint expert and footprint expert.  (See exhibit

22  A)"  Nothing in exhibit A explains this claim, and the evidence at trial was that neither

23  fingerprints nor footprints were found.  *See* RT at 206-207; 214-215.  There would have

24  been nothing for defense experts in those fields to work with.  This claim is without merit.

25  ///

26    Under this heading petitioner also argues that trial counsel was ineffective for failing

27  to impeach Ochinero with a prior inconsistent statement.  Ochinero testified at trial that he

28  was on his way to an appointment "in the 3 o'clock hour."  RT at 85.  At the preliminary

United States District Court

For the Northern District of California

1   hearing Ochinero testified he was on his way to a 2:30 p.m. appointment when he

2   encountered the petitioner.  CT at 29; Petition, Exhibit H.  This claim fails because

3   petitioner has not demonstrated prejudice.  The witness's statement that he was going to

4   an appointment in the "3 o'clock hour" is not materially inconsistent with the preliminary

5   hearing testimony.  Moreover, whether Ochinero was on his way to a 2:30 p.m. or 3:00 p.m.

6   appointment does not change the fact that Ochinero contacted police regarding the

7   encounter at 2:52 p.m.  RT at 109.  Impeaching Ochinero on this minor point would not

8   have changed the outcome of the trial.  This claim is without merit.

9       Finally, petitioner contends that counsel was ineffective in failing to present "an

10   affirmative defense at the preliminary hearing."  He does not explain what affirmative

11   defense he has in mind.  As to this issue he has failed to provide facts that show a real

12   possibility of constitutional error.  This claim is summarily denied.

13                  **v.      Failure to Object to Enhancement**

14       Petitioner contends that counsel was ineffective in not objecting to the sentencing

15   court's treatment of his six prior residential burglary convictions as six strikes, rather than

16   the one strike he contends he was promised at the time of the plea.  As discussed above,

17   this claim is factually incorrect, as the transcript of the plea shows that he clearly was

18   warned that the plea would result in six strikes.  Failure to raise this objection was not

19   ineffective assistance.

20                     **vi.      Failure to Object in Closing**

21       Petitioner contends that counsel was ineffective in not objecting to the purported

22   incidents of prosecutorial misconduct that are the subject of section III, above.  For the

23   reasons discussed there, the prosecutor did not commit misconduct, so objections would

24   have been futile.  This claim is without merit.

25   ///

26                  **vii.      Conceding Guilt on Count Two**

27       Petitioner contends that counsel "unjustly" conceded his guilt on count two, receiving

28   stolen property.  He does not explain what defense he might have had to that charge, nor

United States District Court

For the Northern District of California

1  why he thinks the concession was "unjust."  The portions of the record he cites, however,

2  are from counsel's closing argument in which she refers, in the course of making other

3  arguments, to petitioner having asking Ochinero to cash a check with the victim's name on

4  it – as to which Ochinero had testified, and as to which there was no contrary testimony.

5      Given the evidence summarized above, it clearly was not outside the "wide range of

6  reasonable professional assistance," *see Strickland*, 466 U.S. at 688, for counsel to

7  concede some points in the hope the jury would only convict on the lesser crime rather than

8  the more serious burglary charge.  *See Bell v. Evatt*, 72 F.3d 421, 430 (4th Cir. 1995)

9  (concession of guilt on selected charges to maintain credibility with jury not ineffective);

10 *United States v. Tabares*, 951 F.2d 405, 409 (1st Cir. 1991) (tactical retreat of conceding

11 guilt on lesser charges designed to lead jury towards leniency on more serious charges not

12 ineffective); *United States v. Swanson*, 943 F.2d 1070, 1075-76 (9th Cir. 1991) (finding

13 ineffective assistance when counsel conceded guilt on only charge, but recognizing that "in

14 some cases a trial attorney may find it advantageous to his client's interests to concede ...

15 his guilt of one of several charges").

16     This claim is without merit.

17         **viii.    Failure to Cross-examine Witness about Inconsistent**

18 **Testimony**

19     This claim is rejected for the reasons set out in section (iv) above.

20         **ix.    Conceding that Petitioner Stole Purse**

21     Petitioner contends that counsel was ineffective by conceding that he stole the

22 purse, when he had told her that he found it.  In support of this issue he cites his exhibits A

23 and I. Exhibit A, his declaration, contains no reference to counsel have conceded that he

24 stole the purse, although he does say there that he told counsel he found it.  Exhibit I is

25 counsel's motion to strike the priors; in describing the offense of which petitioner had been

26 convicted, counsel says that he "stole a purse."  At that point petitioner had been convicted

27 of the crime, and that he had stolen the purse was established by the conviction.  Counsel's

28 reference to facts of the crime could not prejudice him.  Counsel was not ineffective as to

**United States District Court**
For the Northern District of California

1    this claim.

2           **7.     Ineffective Assistance of Appellate Counsel**

3           Petitioner contends appellate counsel was ineffective for failing to address any of the

4    above-discussed claims he brings against his trial counsel.  This claim is also without merit.

5           The *Strickland* test is also used on claims of ineffective assistance by appellate

6    counsel.  *See Smith v. Murray*, 477 U.S. 527, 536 (1986); *see also Smith v. Robbins*, 528

7    U.S. 259, 285-86 (2000) ("the proper standard for evaluating [a petitioner's] claim that

8    appellate counsel was ineffective . . . is that enunciated in *Strickland*").  The test for

9    deficient performance is the same as for trial counsel.  *Id.* at 285 (petitioner "must first show

10   that his counsel was objectively unreasonable").  To establish prejudice, a petitioner "must

11   show a reasonable probability that, but for his counsel's [error], he would have prevailed on

12   his appeal." *Id.* at 286 (citation omitted).

13          As discussed above, none of petitioner's claims has merit.  Therefore, appellate

14   counsel was not ineffective for failing to raise them.  *See Turner v. Calderon*, 281 F.3d 851,

15   872 (9th Cir. 2002) ("[A]ppellate counsel was not ineffective for failing to raise [a] meritless

16   claim."); *Featherstone v. Estelle*, 948 F.2d 1497, 1507 (9th Cir. 1991) ("[P]etitioner was not

17   prejudiced by appellate counsel's decision not to raise issues that had no merit.").

18          **8.     Cruel and Unusual Punishment**

19          Petitioner claims that his sentence of thirty years to life constitutes cruel and unusual

20   punishment.  The Eighth Amendment to the United States Constitution provides that there

21   "shall not be ... cruel and unusual punishment inflicted." U.S. Const. amend. VIII.  "The

22   Eighth Amendment does not require strict proportionality between crime and sentence.

23   Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime."

24   *Ewing v. California*, 538 U.S. 11, 23 (2003) (quoting *Harmelin v. Michigan*, 501 U.S. 957,

25   1001 (1991) (Kennedy, J., concurring)); see also *Lockyer v. Andrade*, 538 U.S. 63, 72

26   (2003) ("A gross disproportionality principle is applicable to sentences for terms of years.").

27   The Eighth Amendment does not preclude a state from making a judgment that protecting

28   the public safety requires incapacitating criminals who have already been convicted of at

United States District Court
For the Northern District of California

1    least one serious or violent crime, as may occur under a recidivist sentencing statute.

2    *Ewing*, 538 U.S. at 25, 29-30.

3          In determining whether a sentence is grossly disproportionate under a recidivist

4    statute, the court looks to whether the "extreme sentence is justified by the gravity of [the

5    individual's] most recent offense and criminal history." *Ramirez v. Castro*, 365 F.3d 755,

6    768 (9th Cir.2004). The Court's rationale is simple: Society is warranted in imposing

7    increasingly severe penalties on repeat criminal offenders. "[A]t some point in the life of

8    one who repeatedly commits criminal offenses serious enough to be punished as felonies,"

9    it is may be necessary "to segregate that person from the rest of society for an extended

10   period of time." *Rummel v. Estelle*, 445 U.S. 263, 284-285 (1980).

11         In *Andrade*, the Supreme Court upheld a Three Strikes sentence of two consecutive

12   twenty-five-to-life terms for a recidivist convicted of stealing approximately $150 worth of

13   videotapes. *Andrade*, 538 U.S. at 66, 77. Andrade had a criminal history of petty theft,

14   burglary, and transportation of marijuana. *Id.* at 66. Similarly, in *Ewing*, the Court upheld a

15   Three Strikes sentence of twenty-five years to life for a repeat felon convicted of felony

16   grand theft of three golf clubs worth nearly $1,200. *Ewing*, 538 U.S. at 18-19, 30-31.

17   Ewing had a criminal history of theft, battery, burglary, possession of drug paraphernalia,

18   illegal firearm possession, robbery, and trespass. *Id.* at 18-19. By contrast, the Ninth

19   Circuit in *Ramirez* held that a Three Strikes sentence of twenty-five years to life on petty

20   theft with prior conviction was grossly disproportionate to the crime. *Ramirez*, 365 F.3d at

21   767. Ramirez's prior criminal history consisted of two convictions for second-degree

22   robbery obtained through a single guilty plea, for which his total sentence was one year in

23   county jail and three years of probation. *Id.* at 768. The robberies were "nonviolent"

24   shoplifting crimes in which the "force" used was when a third party drove the getaway car

25   over the foot of a grocery store security guard and when Ramirez pushed a K-mart security

26   guard out of his way as he fled the store. *Id.*

27         Here, petitioner was convicted of first degree residential burglary, a crime arguably

28   more serious than the thefts in *Andrade* and *Ewing*. In determining whether a sentence is

United States District Court

For the Northern District of California

grossly disproportionate under a recidivist sentencing statute, however, courts look not only at the most recent offense, but also at the petitioner's criminal history. *Ramirez*, 365 F.3d at 768.  Unlike in *Ramirez*, where Ramirez's two prior strikes were nonviolent shoplifting crimes, *id.* at 763, petitioner's six prior strikes involved residential burglaries, crimes that have a serious potential for violence.  The felonies that served as his first two strikes were separate incidents of first-degree residential burglary.  CT at 164, 222-223; RT at 340. When pleading no contest to his strikes, petitioner had also been warned of the third-strike consequences of another crime.  Furthermore, petitioner had only been released from prison two months prior to his current offense.  CT at 224.

If the sentences in *Ewing* and *Andrade* were not grossly disproportionate, the sentence here certainly was not.  The state court's rejection of petitioner's Eighth Amendment claim was not contrary to, or an unreasonable application of, clearly established Supreme Court authority. See 28 U.S.C. § 2254(d).  Petitioner is not entitled to habeas relief on this claim.

### CONCLUSION

Petitioner's motion for an evidentiary hearing is **DENIED**.  For the foregoing reasons, the petition for a writ of habeas corpus is **DENIED**.  The clerk shall close the file.

**IT IS SO ORDERED.**

Dated:  April 26, 2010.                        _____

                                                              PHYLLIS J. HAMILTON
                                                              United States District Judge

P:\PRO-SE\PJH\HC.08\MCKENZIE0551.RUL.wpd